CITY OF ST. LOUIS *v.* WESTERN UNION TEL. CO.

(*Circuit Court, E. D. Missouri, E. D.*   June 19, 1889.)

1. CONSTITUTIONAL LAW — INTERSTATE COMMERCE — TELEGRAPH COMPANIES — TAX.

Telegraphs being instruments of interstate commerce, and defendant's lines in the city of St. Louis being used for transmission of messages to all parts of the United States, neither the state nor the city can impose a privilege or license tax upon defendant.

2. SAME—"REGULATION" OF TELEGRAPH COMPANIES.

A tax of five dollars per year upon every telegraph pole used by defendant in the city cannot be upheld under the city's charter power "to regulate" telegraph companies.

At Law.   Suit to recover tax on telegraph poles.

*Leverett Bell*, City Counsellor, for plaintiff.

*Cochran, Dickson & Smith*, for defendant.

THAYER, J.   On March 23, 1884, the municipal assembly of the city of St. Louis amended ordinance No. 11,604, entitled "An ordinance to regulate the erection of telegraph and telephone poles," by adding thereto four new sections, numbered 11, 12, 13, and 14.   Section No. 11 is as follows:

"From and after the first day of July, 1884, all telegraph and telephone companies which are not by ordinance taxed on their gross income for city purposes, shall pay to the city of St. Louis, for the privilege of using the streets, alleys, and public places thereof, the sum of five dollars per annum for each and every telegraph or telephone pole erected or used by them in the streets, alleys, and public places in said city."

Suit in the nature of an action of debt is brought under this section to recover the sum of $22,635, which is alleged to have become due in consequence of the use by the defendant of 1,509 telegraph poles since July 1, 1884; said poles having been erected prior to that date.   A question is raised as to the right of the plaintiff to sue in such form, inasmuch as the ordinance contains no provisions touching the manner of bringing suits to enforce the payment of the tax; but, waiving that question, I am of the opinion that judgment must be entered for defendant on other and more meritorious grounds also urged by defendant's counsel.   The city of St. Louis was originally authorized by its charter "to license, tax, and regulate * * * telegraph companies," etc.; but its power to tax the property, real and personal, of telegraph companies, including their franchises, was taken away by implication by an act approved on the 21st of April, 1877, now section 6901 of the Revised Statutes of Missouri.   Section 11 of the ordinance cannot be supported, therefore, as an exercise of a taxing power vested in the municipality, unless it be contended that the municipality still has power to impose a "privilege tax" on telegraph companies, and that the charge in question of five dollars per pole is in the nature of a privilege tax levied against the defendant; that is to say, a tax imposed on it as a condition precedent to its right to carry on the telegraph business in the city of St. Louis.

Inasmuch as telegraphs are instruments of interstate commerce, and as defendant's lines extend into all parts of the United States, and its wires in the city of St. Louis, Mo., are used daily to transmit messages to all parts of the United States, it is clear that neither the state nor the municipality can impose upon it a privilege or license tax. *Almy* v. *California,* 24 How. 169; *Crandall* v. *Nevada,* 6 Wall. 35; *State Freight Tax,* 15 Wall. 232; *Car Co.* v. *Nolan,* 22 Fed. Rep. 276; *Leloup* v. *Port of Mobile,* 127 U. S. 640, 8 Sup. Ct. Rep. 1380.    The state may tax such property, real or personal, of the defendant as is located within its borders, at such just rate, and in such manner, as the legislature may prescribe, consistently with the laws of the state.    *Telegraph Co.* v. *Massachusetts,* 125 U. S. 530, 8 Sup. Ct. Rep. 961.    The state of Missouri has exercised that power, and has provided how the property of telegraph lines shall be taxed through the medium of a board of equalization, thereby withdrawing the taxing power from the municipality.    In no aspect of the case, therefore, can the section of the ordinance in question be sustained as a valid exercise of any taxing power vested in the city.    It is obvious, I think, that the ordinance cannot be upheld under the power conferred on the municipality "to regulate" telegraph companies.    By virtue of such power, the city authorities may undoubtedly make reasonable regulations touching the location of telegraph poles, their height and size, and very likely, as was recently held by Judge WALLACE in the Southern district of New York, (*Telegraph Co.* v. *Mayor,* 38 Fed. Rep. 552,) may require them to be carried underground rather than overhead.    The section of the ordinance on which the suit is based is not, however, a regulation of that character, nor is it in any proper sense a regulation, within the meaning of the city charter.    The object of the enactment was evidently to secure revenue for the municipality; hence the burden imposed is a tax, and it is imposed in such form that it can only be regarded as a privilege or license tax which the city has no authority to impose. Judgment will be entered for defendant.