**CITY OF ST. LOUIS,
Plaintiff–Appellant,**

v.

**WESTERN UNION TELEGRAPH CO.,
Defendant–Respondent.**

No. 54238.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 15, 1988.

James J. Wilson, City Counselor, Edward J. Hanlon, Associate City Counselor, St. Louis, for plaintiff-appellant.

Ziercher & Hocker, P.C., Edward K. Fehlig, Clayton, for defendant-respondent.

KAROHL, Judge.

This appeal arises in an action instituted by the City of St. Louis (City) in an attempt to collect a ten percent charge on gross receipts from respondent Western Union Telegraph Co. (Western Union) pursuant to the provisions of Section 23.32 of the Revised Code of the City of St. Louis. In a second count, City seeks an injunction to prevent Western Union from use of City's streets, alleys and public places for alleged noncompliance with reporting and bonding requirements of the ordinance and for not filing a written acceptance of the privilege granted in Section 23.32.040.

Western Union filed a counterclaim for declaratory and injunctive relief, claiming it is exempt from any charge or tax for use of City's streets, alleys and public places. It also claims application of the provisions of Section 23.32 to its business would: (1) impair its existing contractual rights in violation of U.S. Const. Art. I, Section 10 and Mo. Const. Art. I, Section 13; (2) constitute disparate treatment of Western Union and telephone companies because of the provisions of Sections 23.32 and 23.34 which would deny Western Union equal protection contrary to the provisions of U.S. Const. Amend. 14, Section 1, and Mo. Const. Art. I, Section 2 and the uniformity of taxation requirement of Mo. Const. Art. X, Section 3; and, (3) constitute an unreasonable burden on interstate commerce in violation of U.S. Const. Art. I, Section 7.

The trial court ruled in favor of Western Union on its counterclaim. The trial court relied on a series of holdings in litigation involving the same parties. *City of St. Louis v. Western Union Tel. Co.*, 39 F. 59 (C.C.E.D.Mo.1889), 148 U.S. 92, 13 S.Ct. 485, 37 L.Ed. 380 (1893); [case remanded for additional evidence] 149 U.S. 465, 13 S.Ct. 990, 37 L.Ed. 810 (1893); [denial of petition for rehearing] 63 F. 68 (C.C.E.D. Mo.1894) *aff'd*, 166 U.S. 388, 17 S.Ct. 608, 41 L.Ed. 1044 (1897). In accord with the holdings in that case the trial court found Western Union had, and continues to have, contractual rights to use the streets, alleys

and public places in the city to conduct its business.

On three separate legal grounds the trial court enjoined the City from enforcing Section 23.32 against Western Union. It ruled that enforcement of that section would be unconstitutional because: (1) it would impair existing contractual rights; (2) it would violate federal and state equal protection rights and uniformity of taxation provisions in the Missouri Constitution; and (3) it would violate the commerce clause of the Art. I, Section 8 of the U.S. Constitution. On November 23, 1987, the trial court designated its order a final judgment for purposes of appeal.[1]

City appeals the decision of the trial court on three grounds. First, City contends the trial court erred in holding that the application of Section 23.32 to Western Union would constitute an impairment of Western Union's contractual rights with City in violation of Mo. Const. Art. I, Section 13 and Art. I, Section 10 of the United States Constitution. Second, City claims the trial court erred in holding that Section 23.32 violates the equal protection provisions of Mo. Const. Art. I, Section 2 and the 14th Amendment of the United States Constitution and the uniformity of taxation provision of Mo. Const. Art. X, Section 3, by imposing a ten percent gross receipts license tax on telegraph companies but not on telephone companies providing telegraph services. Third, City claims Section 23.32 imposes a tax not a rental, and taxes only those activities conducted by Western Union in the City of St. Louis. City contends the court erred in holding the charge constitutes an unreasonable burden on interstate commerce and the injunction is overly broad in denying City the power to tax.

City is a municipal corporation and a Constitutional Charter City. Western Union is a public utility operating throughout the United States and elsewhere providing communication services by telegram, tele-type, telex, microwave and other forms. It is a telegraph company as defined in Title 47 U.S.C., Section 154. It is licensed by the Federal Communications Commission. Western Union provides telegraph and telephone services in the City of St. Louis and uses the city's streets, alleys and public places in providing such services. It operates a microwave transmission facility in the city and also transmits telegram, tele-type, telex and other types of messages over a cable system. Western Union also has agents in the city for the sale of money orders and a business office in the downtown business district.

For several reasons we deny City's first point on appeal; we find the trial court properly concluded the charge imposed by Section 23.32 constitutes a "rent" not a "tax." The distinction is relevant because City contends the "contract" which was the subject of the prior litigation does not contain an express exemption from future tax. City contends that contractual rights will not protect Western Union from a new tax because City did not contract not to tax, and could not so contract, because of the provisions of Art. X, Section 2 which prohibit any such agreement.

We find *City of St. Louis v. Laclede Power & Light Co.*, 347 Mo. 1066, 152 S.W.2d 23 (1941) directly on point. In *Laclede Power & Light Co.*, the City of St. Louis brought suit against Laclede Power & Light Co. to collect a five percent gross receipt charge from the company based on the companies' business of supplying electricity, light, heat and power within the city between 1929 and 1933.

Briefly, the history of *Laclede Power & Light Co.* is as follows. Laclede Gas Light Company was incorporated and created in 1857. The state conferred a charter on the gas company in that same year. The gas company operated under this charter until 1926 at which time it leased its equipment to Laclede Power & Light Company. In

---

1. By consent, a separate court trial of Western Union's counterclaim was held on a Stipulation of Facts supplemented by the affidavits of Kenneth S. Bouchez, Western Union's outside plant manager, and Chester W. Parowski, and the depositions of Robert Boxdorfer, City's fire alarm manager, and Louis Heins, current fire alarm supervisor, with exhibits thereto. The affidavits and depositions are not part of the appeal record.

1884, the City of St. Louis enacted an ordinance regulating the business of vending electricity. The relevant section of the ordinance reads as follows:

> Sect. 10. "No person or persons, corporation or association, shall be entitled to any of the privileges conferred by this ordinance, except upon the following conditions: That said person ... shall file with the city register his or its acceptance of all the terms of this ordinance, and agree therein that he or it will file with the comptroller of the city, ... a statement of his or its gross receipts from his or its business arising from supplying electricity for light or power for the six months ... and further agree that he or it will, ... pay into the city treasury 2½ per cent on the amount of such gross receipts up to the year 1890, and five percent on the amount of such gross receipts thereafter." *Id.* at 23.

The court in *Laclede Power & Light Co.*, found that the relevant charge was a rent, not a tax. "We are of the opinion that the charge of five percent is clearly a rental to be paid by those who obtain a franchise under the terms of the ordinance, and who are required, as a condition precedent to obtaining such a franchise, to agree in writing to pay the five per cent." *Id.* at 25. The court based its determination on the conduct of the parties from the enactment of the ordinance in 1884, to the time the suit was filed. The court observed that the behavior of the parties "harmonize[d] with the theory that the charge of five percent is a rental...." *Id.* at 24. The court stated that if the ordinance was a tax then Laclede Gas Light Company should have been paying the tax since it began vending electricity in 1857. *Id.*

In the instant case, Western Union has never paid a fee for using public streets and alleys since it began its services. In fact, City requested Western Union pay a charge for the use of the streets and alleys almost one hundred years ago, at which time the parties litigated just this issue. In *City of St. Louis v. Western Union Telegraph Co.*, 63 F. 68, 69 (C.C.E.D.Mo. 1894), *aff'd.* 166 U.S. 388, 17 S.Ct. 608, 41 L.Ed. 1044 (1897), the court considered an ordinance passed by City in 1884 in which City attempted to impose a charge of five dollars per telegraph pole for the "privilege of using the streets, alleys and public places" of the city. Ordinance 11,604 of 1881 provided:

> Sec. 8. Any company erecting poles under the provision of this ordinance shall, before obtaining a permit therefor from the Board of Public Improvements, file an agreement in the office of the City Register, permitting the city of St. Louis to occupy and use the top cross arm of any pole erected or which is now erected, for the use of said city for telegraph purposes, free of charge.

In *Western Union Telegraph Co.*, the court rejected City's attempt to enforce the 1884 ordinance. After remand from the U.S. Supreme Court, it was determined Western Union had constructed poles and had allowed City to use its poles and cross arms free of charge as required in Ordinance 11,604 of 1881. The court held that Western Union's agreement pursuant to the 1881 ordinance "became a binding contract from which the city could not recede so long as the poles stood in the plaintiff's streets; and when the city took the benefit thereof by using the defendant's poles, it became an executed contract." *Western Union Telegraph Co.*, 63 F. at 71 (C.C.E.D. Mo.1894).

This holding, affirmed by the U.S. Supreme Court, is the final judicial statement on whether City can impose an additional charge for Western Union's use of City's street, alleys and public places. *Western Union Telegraph Co.* confirms the existence of the 1881 contract, and by principles of res judicata, Western Union contends City cannot re-litigate the issue once more. *See, Cantrell v. City of Caruthersville*, 267 S.W.2d 646 (Mo.1954).

The trial court found as a fact, Section 23.32 provided for a fee or a rental, not a tax. That section requires an annual report of the extent of use of streets, alleys and public places and imposes a charge for the privilege to use such areas. The payment is described as a charge based on

gross receipts. It is not described as a tax. The language of Section 23.32 does not support City's position because it follows the form of prior ordinances which were found to require rentals, not taxes.

Furthermore, in 1906, City approved Ordinance 22,194 which specifically refers to Western Union and adopts the decision of the Supreme Court in *City of St. Louis v. Western Union Telegraph Co.*, 63 F. 68 (C.C.E.D.Mo.1894), *aff'd.*, 166 U.S. 388, 17 S.Ct. 608, 41 L.Ed. 1044 (1897). The relevant section of the ordinance reads as follows:

> The Western Union Telegraph Company and the Postal Telegraph Cable Company are hereby authorized and directed to file the $50,000 bond and the acceptance specified in Section 10079 of the Municipal Code of St. Louis, relating to telegraph companies which said bond shall contain the conditions required in said Section 10079 and also a further clause that the giving of the said bond by Western Union Telegraph Company or by the Postal Telegraph Cable Company as the case may be, shall not be considered as a waiver of any of the rights of said company under and by virtue of a certain decision of the Supreme Court of the United States in a certain clause wherein the City of St. Louis was plaintiff and the Western Union Telegraph Company was defendant, ... in which it was ruled that a certain charge of five dollars per pole on the poles of the said defendant company was reasonable.

Since the enactment of Ordinance 22,194, Western Union has allowed City to use its underground ducts, free of charge, for City's fire and police alarm systems. City's fire alarm manager from 1964 to 1984, testified in his deposition that City used Western Union's ducts during his term as manager and was continuing to do so at the time he left. Western Union did not charge City for the use of its ducts nor for the repairs that Western Union made on the ducts used by City. City's present fire alarm supervisor testified in his deposition that City continues to use underground cables for fire alarm purposes. Western Union has not charged City for

the use of these cables. Western Union's outside plant manager stated, by affidavit, that Western Union has maintained at its own expense the ducts used by City and that Western Union has not charged City any rent, fee or charge for the use of the ducts in the past, and that Western Union is presently maintaining these ducts and permitting City to use them free of charge. The contract position from the 1881 ordinance was further supported after the 1906 ordinance.

The United States Court of Appeals, Fifth Circuit, addressed the issue of contractual acceptance impaired by subsequent legislation in *City of Meridian v. Southern Bell Telephone & Tel. Co.*, 256 F.2d 83 (5th Cir.1958); *vacated and remanded*, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed. 2d 562 (1959) (per curiam). Here, the Mississippi legislature by Mississippi Act of 1886 offered telephone and telegraph companies the right to use highways and streets to provide citizens with telephone services. While the companies were already operating when the Act was passed, new poles, and further construction and expansion of telephone lines on the public thoroughfares, constituted an acceptance by the telephone company to use the streets and highways free of charge.

In 1956, the City of Meridian passed a statute imposing a two percent monthly service charge on telephone companies for their use of highways, streets and roads of Mississippi. The court held the offer of 1886, when accepted resulted in a contract, which could not be impaired by imposing a subsequent charge on telephone companies for their use of public streets, alleys and thorough-fares. *City of Meridian v. Southern Bell Telephone & Tel. Co.*, 256 F.2d 83, 86–9 (5th Cir.1958). So too in the instant case, Western Union's and City's behavior reflect a contractual relationship not subject to impairment by subsequent legislation.

There is further support for the finding of the trial court that the ordinance seeks to impose a rental not a tax. Contractual duties on the part of both City and Western

Union were articulated in Ordinance 18,680 (1896). That ordinance required Western Union to place all telephone, telegraph wires, tubes and cables underground in specific areas of the city. It required Western Union, along with other companies, to place their wires underground and permit City free use of their ducts, manholes and appurtenances.

The pertinent part of Ordinance 18,680 reads as follows:

Section 604–F. [A]ny person or persons, corporation or association ... desiring to construct a conduit on any street, alley or public place named in the advertisement, shall at that time present ... a statement of their requirements. After said hearing the Board of Public Improvements shall consider all of the applications and examine into the space available for conduits or ducts under the streets, alleys and public places named in the advertisement ... and shall include in the plans such ducts, and fire alarm circuits and telephone service, said ducts, manholes and appurtenances as the board may provide for the use of the city, to be constructed and maintained by the parties receiving the permit, and to be used by the city free of charge or cost of any kind.

The behavior of Western Union after the 1896 Ordinance, 18,680, confirms that it allowed City to use its "ducts, manholes and appurtenances" free of charge. City did make use of the equipment without a charge. The contract considered in the prior litigation remained in force. The holding in that case barred any rental. City does not dispute this result. However, it contends Section 23.32 charges a tax not a rental. It concludes the original litigation

did not involve the power to tax or authority to contract away the power to tax.

However, Section 23.32 does not clearly impose a tax. First, we have already noted that Section 23.32 describes the payment of a "charge" but does not employ the word "tax." The following Section, 23.34, expressly imposes a "tax" on telephone companies. The relevant provisions of Section 23.34 read as follows:

*Every person* now or herefter [sic] *engaged in* a *general telephone business* in the city, providing both exchange, or local, and toll or long distance telephone service to its customers *shall pay to the city a tax* as hereinafter provided in this chapter. Section 23.34.010. (Our emphasis.)

*Every telephone company shall pay to the city a tax equaling 10 percent of the gross receipts* of any such company obtained from its customers within the city for any services there provided, *except* such receipts as telephone service, *charges for message rate interzone telephone service, charges for exclusive interstate service of any kind, charges for Morse, telegraph or radio program transmission facilities,* or for other services furnished exclusively and permanently in connection with services extending beyond the boundaries of the city, charges for billing and collection for telegrams, ... Section 23.34.020. (Our emphasis).

The wording of Section 23.34 reflects that City clearly intended and expressly declared the charge demanded to constitute a tax. The drafters of Section 23.32 chose not to employ the word "tax." The omission of the word "tax" when considered with all the provisions of Section 23.32 suggests a contrary intention.[2]

---

**2.** We also notice that Section 23.32 may not apply to Western Union for either a rental or a tax. The pertinent language reads:

23.32.040 Statement of gross recepts.

Each corporation *about to commence business* shall file with the Register, at the time the application is made for the use of the streets, alleys, or public places its written acceptance of privilege granted by this code and having agreed in such application that it will *on or before the second last day of each*

month commencing October, 1969, file with the Comptroller a statement of its gross receipts from its telephone and telegraph business within the City for the next preceding month. This statement shall be verified by the affidavit of its president or secretary. (Ord. 55391 Section 1 (part), 1969: 1948 C. Ch. 55 Section 80(a): 1960 C. Section 153.-040.) (Emphasis ours).

This section addresses corporations "about to commence business." Logically, Western Un-

Second, if the provisions for the payment of ten percent of the gross receipts was a tax and not a rental prohibited by contract, then acceptance of the ordinance terms would not be required. *City of St. Louis v. Laclede Power and Light Co.*, 347 Mo. 1066, 152 S.W.2d 23, 25 (1941). Section 23.32.040 clearly calls for an acceptance on the part of Western Union. That Section provides:

> Each corporation about to commence business shall file with the Register, at the time the application is made for the use of the streets, alleys, or public places its *written acceptance* of privilege granted by this code and having agreed in such application that it will ... file with the Comptroller a statement of its gross receipts from its telephone and telegraph business ...

Those subject to the ten percent charge as rental are those who obtain a franchise under the terms of the ordinance, and, as a condition precedent, agree in writing to pay the ten percent charge on future business ventures. *City of St. Louis v. Laclede Power and Light Co.*, 152 S.W.2d at 25 (Mo.1941). The language of the ordinance and the behavior of Western Union reflect that Section 23.32.040 imposes payment under an agreement, and therefore, constitutes a rent not a tax charge.

■ For these reasons, we find that the charge in Section 23.32 constitutes a rent not a tax as found by the trial court and that this issue was previously litigated by the parties and so decided on similar provisions in previous ordinances. The provisions of Section 23.32 are substantially the same as those employed in prior Ordinances, 11,604, 18,680 and 22,194. The attempted assessment was found by the trial court to be a rental barred by existing contractual rights. We conclude that finding was supported by the facts, and not a misapplication of the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

There are two elements to City's second point on appeal: (1) the trial court erred in finding and ruling Section 23.32 violates the equal protection provisions of Missouri Const. Art. I, Section 2 and the Fourteenth Amendment to the United States Constitution and, (2) Section 23.34.020 violates the uniformity of taxation provisions of Art. X, Section 3 of the Missouri Constitution by imposing a ten percent gross receipts license fee or tax on telegraph companies but not on telephone companies providing telegraph services. First, City claims Western Union failed to demonstrate that any telephone company providing telegraph services was actually treated differently. Second, City contends the difference between telegraph companies and telephone companies providing telegraph services is a rational basis upon which to treat those entities differently.

A tax unconstitutionally denies equal protection if it imposes a charge on one class and exempts another class when the exemption is not "based on a difference reasonably related to the purpose of the law." *Missouri Pacific R.R. Co. v. Kirkpatrick*, 652 S.W.2d 128, 132 (Mo. banc 1983). City's system of classification must bear a rational relationship to the stated purpose.

■ While the activities of companies described in Section 23.32 are the same as applied to telephone and telegraph companies, the service companies are treated differently under the exemption accorded only to telephone companies in the next section of the city code, Section 23.34. Section 23.32.030 states:

> No telegraph or telephone corporation shall be privileged to use the streets, alleys and public places of the City provided in this chapter, except upon the following conditions set forth in this chapter.

Section 23.34.020 exempts telephone companies providing telegraph services but not telegraph companies from a tax imposed on

---

ion, an existing business, is not a corporation "about to commence business." It has supplied its services to the St. Louis area for over a century. We would not find the trial court erred in interpreting the charge as either a tax or a rental where it otherwise was not enforceable against defendant.

telegraph services. Section 23.34.020 provides:

> Every telephone company shall pay to the city a tax equaling ten percent of the gross receipts of any such company obtained from its customers within the city for any services there provided, except such receipts as represent charges for ... exclusive interstate service of any kind, charges for Morse, telegraph or ... for other services furnished exclusively and permanently in connection with services extending beyond the boundaries of the city, charges for the billing and collecting for telegrams ...

Because of the apparent disparate treatment in these sections the trial court found Section 23.32 violated constitutional equal protection guarantees. We find no error in this conclusion.

City further contends the trial court erred in finding the ordinance improperly imposed a burden upon interstate telegraph companies and therefore, violates the Commerce Clause of the U.S. Constitution, Art. I, Section 8. The parties stipulated that Western Union provides telegraph services throughout the United States. The court took judicial notice of the fact that telegraph companies engage primarily in interstate communication service, while telephone companies provide primarily intrastate communication service.

To demonstrate that government treatment of a party violates the Commerce Clause, the challenging party must show that the state law discriminates against interstate commerce, either on its face or in its practical effect. *Maine v. Taylor*, 477 U.S. 131, 138–39, 106 S.Ct. 2440, 2448, 91 L.Ed.2d 110, 120–21 (1986) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 336; 99 S.Ct. 1727, 1736; 60 L.Ed.2d 250 (1979)). Section 23.34.020 exempts telephone companies from a charge on Morse, telegraph, and "other services furnished exclusively and permanently beyond the boundaries of the city," and from "charges for billing" and "collecting for telegrams." It offers no exemption to Western Union, a telegraph company.

■ City argues Section 23.32 [with 23.-34] survives a commerce clause challenge because it collects gross receipts only from Western Union's "customers within the City for any services provided...." Section 23.32.050. Section 23.34.020, however, subjects telephone companies to a charge on their intra-city receipts only, and exempts telephone companies from intrastate and interstate receipt charges, and charges from billing and collecting telegrams. Section 23.32 attempts to impose a charge on Western Union for its interstate services that originate in, or are received in, the city. The section does not subject telephone companies to such a charge. The result is discriminatory against interstate commerce.

Disparate treatment exists where state law imposes a burden on services provided to or from outside the state but not on the same services provided within the state. *Tyler Pipe Industrial v. Washington Department of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 2820, 97 L.Ed. 199 (1987). A state may not constitutionally favor its own residents by taxing foreign corporations at a higher rate. *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869, 881, 105 S.Ct. 1676, 1683, 84 L.Ed.2d 751 (1985). A state may not tax a transaction more heavily when it crosses state boundaries than when it happens entirely within the state. City's attempt to charge Western Union for services rendered within but directed outside the city while exempting telephone companies who provide the same services, violates the Commerce Clause because it discriminates against interstate commerce.

The disparate treatment in the sections supports the finding of facial or actual discrimination. In such, City must assume the burden of proof that the disparate treatment serves a legitimate state purpose and that a less discriminatory means is not available to achieve the same purpose. *Maine v. Taylor*, 477 U.S. 131, 138–39, 106 S.Ct. 2440, 2448, 91 L.Ed.2d 110, 120–21 (1986) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 336; 99 S.Ct. 1727, 1736; 60 L.Ed. 2d 250 (1979)). In the instant case, City provided the trial court with no explanation of how the different treatment of telephone

companies and defendant telegraph company in Sections 23.32 and 23.34.020 serves a legitimate local purpose or that a less discriminatory alternative is not available. We find no error in the conclusion of the trial court that Section 23.32, discriminates against Western Union, a telegraph company, with respect to charges for the use of its streets and constitutes a violation of the Commerce Clause.

Because we agree Section 23.32 assesses a rental barred by contract and not a tax, the injunction addressed only to that Section is not overbroad. It does not, however, apply to, or enjoin future legislation. It only enjoins actions done or threatened by the city on the authority of existing Section 23.32 of the city code.

We affirm.

GRIMM, P.J., and PUDLOWSKI, C.J., concur.