**MISSOURI PACIFIC RAILROAD COMPANY, Plaintiff-Appellant,**

v.

**James C. KIRKPATRICK and Richard King, Defendants-Respondents.**

**No. 64190.**

Supreme Court of Missouri,
En Banc.

May 31, 1983.

Rehearing Denied June 30, 1983.

---

RSMo Supp.1982 as it relates to domestication taxes based on a foreign corporation's property within Missouri. Plaintiff-appellant Missouri Pacific Railroad Company (MoPac) sought declaratory and injunctive relief against defendants' attempt to collect taxes allegedly owed by virtue of § 351.-600.3. The trial court denied MoPac's request for relief and found that it owed taxes in the sum of $96,660 together with interest thereon.

We find that the challenged provisions of § 351.600.3 cannot pass constitutional scrutiny and unlawfully discriminate against foreign corporations. We therefore reverse the judgment.

The portion of § 351.600.3 involved and which is the cynosure of this case relates to domestication taxes on a foreign corporation's proportion of stated capital and surplus involving increases in property located within Missouri. The particular statute provides:

> It shall be the duty of every foreign corporation to cause an affidavit of its president or one of its vice presidents or secretary or treasurer to be filed when requested by the secretary of state showing the proportion of the stated capital and surplus of said corporation which is represented by its property located and business transacted in this state and showing the value of the corporation's property located in the state at any time after it was authorized to transact business in this state so that it can be determined whether or not the proportion of its stated capital and surplus which is represented by its property located and business transacted in this state or the value of the corporation's property located in this state has been increased since it was authorized to transact business in this state or since its last report. *In case it is shown that the proportion of the stated capital and surplus of such corporation which is represented by its property located and business transacted in this state (which shall in no event be less than the value of the corporation's property located in this state) has increased since it*

Michael G. Biggers, St. Louis, for plaintiff-appellant.

John Ashcroft, Atty. Gen., Bobby J. Jones, Asst. Atty. Gen., Jefferson City, for defendants-respondents.

GUNN, Judge.

Lying in the heart of this appeal is a test of the constitutional validity of § 351.600.3,

*was authorized to transact business in this state or since its last report and the payment of domestication taxes or fees above the greatest amount upon which the domestication taxes or fees have heretofore been paid, it shall be required to pay domestication taxes or fees on all such increases as is required with respect to an organization tax or fee of corporations organized under or subject to this chapter when increasing its authorized shares.*

(Emphasis added.)

The effect of this statute is to require foreign corporations to pay an additional domestication tax or fee on the proportion of stated capital and surplus represented by an increase in property and business in Missouri. Missouri corporations are not subject to such tax or fee increase. Hence, the fourteenth amendment equal protection issue surfaces for consideration.

MoPac is a foreign corporation incorporated in Delaware in 1977. It possesses a § 351.585, RSMo 1978 certificate of authority to transact business in Missouri. At the time of its Delaware incorporation, MoPac authorized the issuance of 1,000 shares of common stock at $1.00 par value. All authorized shares were issued at the time of incorporation, and no additional shares have been authorized or issued. In March 1978, it filed its application for certificate of authority to transact business in Missouri and paid appropriate domestication and filing fees.[1] In its application, MoPac represented that its stated capital was $1,000 and that it had no surplus. Its $1,000 assets were represented by cash in a Missouri bank. On August 31, 1978, MoPac was issued its certificate of authority by defendant James C. Kirkpatrick, the Missouri Secretary of State.

On September 1, 1977, MoPac entered into a joint merger agreement with the Missouri corporation known as Missouri Pacific Railroad Company (MoPac-Missouri)[2] and seven other railroads, some of which were Missouri corporations and some of which were not. The result of the agreement was to merge and consolidate all the corporations into MoPac, the Delaware corporation, as the survivor. The Interstate Commerce Commission approved the plan and agreement of merger subject to certain conditions.

Articles of merger were filed with the Missouri Secretary of State and a certificate of merger was issued and, ultimately, an amended certificate of authority of a foreign corporation given to MoPac, the surviving corporation.

The consequence of the merger was that the domestic corporation, MoPac-Missouri, along with the seven other railroads, became part of the plaintiff in this case, MoPac, the Delaware corporation.

As of December 31, 1976, prior to the merger, MoPac-Missouri had approximately $1,729,902,000 in total assets and approximately $999,291,000 in operating revenues. On that same date, the other seven railroads had total assets of approximately $49,063,000 and total operating revenues of approximately $14,377,000. Total mainline track mileage of MoPac-Missouri was approximately 11,786 miles, and the total mainline trackage of the other seven railroads was approximately 528 miles.

MoPac, the surviving Delaware corporation and plaintiff in this case, is presently engaged in the business of operating a railroad. It operates approximately 11,500 miles of mainline trackage in Missouri, Nebraska, Colorado, Kansas, Illinois, Oklahoma, Arkansas, Mississippi, Louisiana, Tennessee, Texas and New Mexico. Its records indicate at the time of the merger and consolidation it had 1,379 miles of mainline railroad trackage in Missouri, 1,340 miles of which were initially placed in Missouri before November 21, 1943.

On December 31, 1980, defendant Secretary of State Kirkpatrick sent a demand letter to MoPac indicating that taxes of $96,660 were due and owing to the state

1. The domestication and filing fees totaled $60.

2. MoPac-Missouri was incorporated in Missouri in 1917.

under § 351.600. This amount is based on Secretary of State Kirkpatrick's calculations of additional domestication tax owed by MoPac as of December 31, 1980, pursuant to § 351.600.3 and its 1980 foreign corporation affidavit. The affidavit showed that there had been no change in the $1,000 stated capital since MoPac's formation but that there had been a substantial increase in its property located in this state. MoPac refused to pay the tax asserting that § 351.600.3 was not applicable to it by virtue of Mo. Const. art. XI, § 10[3] and that the tax was unconstitutional.

The Attorney General of Missouri advised the Secretary of State that a foreign railroad corporation is required to pay an additional domestication tax or fee when there has been an increase in the proportion of its stated capital and surplus represented by its property and business in Missouri due to the merger of a domestic corporation into a qualified foreign railroad corporation. All parties have stipulated that if MoPac were a Missouri corporation, it would not owe any additional domestication or incorporation tax as a result of the increase in its business and property stemming from the merger and consolidation and from subsequent operations. The disparity in tax consequences results from the use of different tax bases for domestic and foreign corporations.

Section 351.065, RSMo 1978 applies to domestic corporations and provides for an incorporation tax based on the authorized shares of the corporation (*i.e.,* $50 for the first $30,000 or less of authorized shares and a further sum of $5 for each additional $10,000 of its authorized shares). Section 351.585, RSMo 1978 pertains to foreign corporations and requires such corporations to pay a domestication tax or fee as a condition to securing a certificate of authority to transact business in Missouri. The domestication tax or fee is based upon the corporation's proportion of stated capital and surplus represented by its property and business in Missouri provided, however, that the value of that proportion "shall in no event be less than the value of the corporation's property located in" the state of Missouri. The domestication tax or fee purports to be equal to the incorporating tax or fee of domestic corporations. Section 351.600.3 requires a foreign corporation to file an affidavit indicating whether the proportion of the stated capital and surplus which is represented by its property located and transacted in Missouri ("which shall in no event be less than the value of the corporation's property located in this state") has increased since it was authorized to transact business within the state or since its last report. The corporation is required to pay domestication taxes or fees on all such increases as is required with respect to an organization tax or fee on a domestic corporation when it increases its authorized shares. The net effect of these provisions is that a foreign corporation is required to pay an additional domestication tax or fee on the greater of increases in either (a) authorized shares or (b) property located in this state. In comparison, a domestic corporation pays an additional organizational tax or fee only on increases in its authorized shares regardless of whether its property in this state has been increased.

MoPac maintains that the disparity between taxation of foreign and domestic corporations denies it equal protection in violation of U.S. Const. amend. XIV, § 1 and Mo. Const. art. I, § 2.[4] MoPac argues that

---

**3.** Mo. Const. art. XI, § 10 provides in pertinent part that if any railroad corporation organized in Missouri shall consolidate with any railroad corporation organized in another state, it "shall not thereby become a foreign corporation, but the courts of this state shall retain jurisdiction in all matters" as if the consolidation had not taken place.

**4.** Related to the equal protection issue is MoPac's argument that § 351.600.3 violates the uniformity clause of the Missouri Constitution because it imposes a non-uniform, unequal tax upon foreign corporations. Mo. Const. art. X, § 3 requires that "[t]axes ... shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." There is no precise guage as to reasonableness of classification, but the classification cannot be arbitrary. *Barhorst v. City of St. Louis,* 423 S.W.2d 843, 846 (Mo. banc 1967).

the difference in the domestication tax imposed on foreign corporations and the incorporation tax imposed on domestic corporations is not based on any genuine difference and does not rationally promote a legitimate state purpose.

■ At this juncture, it is appropriate to indite some fundamental legal rubric bearing on the denouement of these proceedings. A tax is unconstitutional as denying equal protection of law by imposing a tax on one class and exempting another when the exemption is not based on a difference reasonably related to the purpose of the law. *Southwestern Bell Telephone Co. v. Morris,* 345 S.W.2d 62, 65–66 (Mo. banc 1961); *Petitt v. Field,* 341 S.W.2d 106, 109 (Mo.1960). And, certainly, the state's system of classification must bear some rational relationship to state purpose. But it is, of course, impossible to avert all discriminatory impact. *San Antonio Independent School District v. Rodriquez,* 411 U.S. 1, 41, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973); *Virden v. Schaffner,* 496 S.W.2d 846, 849–50 (Mo.1973), *appeal dismissed,* 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). Moreover, equal protection does not mean that the state cannot treat one class of entities differently than another. The measure lies in whether the difference amounts to invidious discrimination. *Bopp v. Spainhower,* 519 S.W.2d 281, 289 (Mo. banc 1975).

■ Now, toward the precise issue at hand regarding treatment of foreign and domestic corporations, it has been held that subject to constitutional limitations, no state need allow corporations of other states to do business within its jurisdiction unless it chooses. *State ex inf. McKittrick v. Fidelity Assur. Ass'n,* 352 Mo. 725, 179 S.W.2d 67, 70 (1944). The state may even impose onerous or even impossible conditions upon the original admission of a foreign corporation. *State ex rel. Atlantic Horse Ins. Co. v. Blake,* 241 Mo. 100, 144 S.W. 1094, 1096 (1912). *Lincoln National Life Ins. Co. v. Read,* 325 U.S. 673, 65 S.Ct. 1220, 89 L.Ed. 1861 (1945), addressing the issue of whether imposition of a tax on foreign corporations based on a percentage of premiums collected in the state constituted a denial of equal protection, states:

It has been held both before and after the Fourteenth Amendment that a State may impose on a foreign corporation for the privilege of doing business within its borders more onerous conditions than it imposes on domestic companies. *Paul v. Virginia* [75 U.S. 168], 8 Wall. 168, 19 L.Ed. 357; *Ducat v. Chicago* [77 U.S. 410], 10 Wall. 410, 19 L.Ed. 972; *Philadelphia Fire Ass'n v. New York,* 119 U.S. 110, 7 S.Ct. 108, 30 L.Ed. 342. But it is said that a State may not impose an unconstitutional condition—that is it may not exact as a condition an infringement or sacrifice of the rights secured to the corporation by the Constitution of the United States. The argument apparently is that since appellant is entitled to the equal protection of the laws, a condition cannot be imposed which results in its unequal and discriminatory treatment.

But that argument proves too much. If it were adopted, then the long established rule that a State may discriminate against foreign corporations by admitting them under more onerous conditions than it exacts from domestic companies would go into the discard. Moreover, it has never been held that a State may not exact from a foreign corporation as a condition to admission to do business the payment of a tax measured by the business done within its borders.

*Id.* at 676–77, 65 S.Ct. at 1222 (footnote omitted).

However, the view of domestication of a foreign corporation as an absolute privilege extended at the sole discretion of the state has substantially eroded since its origination in *Paul v. Virginia,* 75 U.S. 168, 8 Wall. 168, 19 L.Ed. 357 (1868).

In *Western & Southern Life Insurance Co. v. State Board of Equalization of California,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981), the constitutionality of retaliatory taxes on foreign corporations was examined. The outcome was that "whatever the extent of a State's authority to exclude foreign corporations from doing

business within its boundaries, that authority does not justify imposition of more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose." The decision in *Lincoln National* was thus viewed as somewhat of an "anachronism." *Id.* 325 U.S. at 677–78, 65 S.Ct. at 1222.

*Western & Southern Life* further held that two propositions must be answered: (1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe its use would promote that purpose? 451 U.S. at 668, 101 S.Ct. at 2083. Applying this two-pronged test to the instant facts, it is evident that imposition of the § 351.600.3 domestication tax on foreign corporations does not satisfactorily surmount for the state the first part of the rational basis test.

The disparity in taxation that is contested here arises because a domestic corporation owes an additional tax only when it increases its authorized shares. On the other hand, a foreign corporation owes an additional tax when it increases its property in the state regardless of whether it has increased its authorized shares.

The state argues that the tax imposed by § 351.600.3 serves two legitimate state purposes. First, the state maintains that the present statute was enacted by the legislature in an effort to avoid the commerce clause problems discussed in *Montgomery Ward & Co. v. Becker,* 334 Mo. 789, 69 S.W.2d 674 (banc 1934), *cert. denied,* 293 U.S. 559, 55 S.Ct. 71, 79 L.Ed. 660 (1934) (imposition of privilege tax upon authorized and in part unissued capital stock violated the commerce clause of the United States Constitution). Enactment of a statute which is violative of one constitutional principle (*i.e.,* equal protection) to avoid violation of another constitutional principle (*i.e.,* commerce clause) cannot be accepted as a legitimate state purpose.

Second, the state suggests that enactment of § 351.600 reflects the legislature's concern that a corporation could be formed in a state such as Delaware with nominal capitalization at the time of its organization and thereafter qualify in the state of Missouri where it expected substantial intrastate transactions. If it did not increase its capital structure, the corporation, through the device of merger with other corporations, could use an extensive amount of its capital in intrastate business without additional expense, whereas a competing domestic corporation in Missouri would be required to pay a large fee on any sizeable increase if it increased capitalization. Accordingly, the state contends that the intent was not to obtain revenue from foreign corporations or to discriminate against them but to prevent them from circumventing Missouri corporate statutes and discriminating against Missouri domestic corporations. Again, this attempt at establishing a legitimate state purpose does not withstand scrutiny. As stipulated by both parties, if MoPac were a domestic corporation, no additional domestication or incorporation tax would be due as a result of the increase in its business and property stemming from the merger and consolidation and from subsequent operations. A domestic corporation which increased its property in Missouri but did not increase its authorized shares would not be liable for any additional tax on that increase. Consequently, there is no merit to the argument that a foreign corporation through the device of merger could escape tax that a domestic corporation would be required to pay.

Based on the foregoing, it is apparent that the challenged statute serves no legitimate purpose. The foreign corporation is, instead, taxed for carrying on business by a different and more onerous rule than is used in taxing domestic corporations for the same privilege. The consequence is a denial of equal protection. *See Southern Railway Co. v. Greene,* 216 U.S. 400, 418, 30 S.Ct. 287, 291, 54 L.Ed. 536 (1910).

For the reasons stated, that portion of § 351.600.3 which imposes an increase in tax on foreign corporations by reason of property or business increase as a result of

merger with other corporation or corporations is violative of equal protection of the laws. U.S. Const. amend. XIV, § 1.

Resolution of the case on equal protection obviates the need to examine the merit of other grounds for reversal urged by MoPac.

Judgment reversed.

All concur.