**SCHOOL DISTRICT OF RIVERVIEW GARDENS, et al., Appellants,**

v.

**ST. LOUIS COUNTY, et al., Respondents.**

**No. 73625.**

Supreme Court of Missouri, En Banc.

Sept. 24, 1991.

Thomas E. Tueth, Thomas F. Schlafly, St. Louis, for appellants.

William L. Webster, Atty. Gen., B.J. Jones, Asst. Atty. Gen., Jefferson City, for respondents.

Bourne Bean, Jordan B. Cherrick, Andrew B. Mayfield, James E. Mello, St.

Louis, for amicus: Metro. Zoo. Park & Museum Dist.

ROBERTSON, Chief Justice.

Appellants in this case advance a number of constitutional challenges to Section 137.-115.1(2), RSMo 1986. Despite the broad spectrum across which appellants attack the constitutionality of the statute, the dispositive issue on this appeal is narrow: Whether the provisions of Section 137.115.-1(2), which purport to treat political subdivisions in the City of St. Louis and St. Louis County differently than political subdivisions in other counties of the state for purposes of adjusting an *ad valorem* tax rate following reassessment, violates Article III, section 40(30), Missouri Constitution. That constitutional provision prohibits the General Assembly from passing local or special laws where a general law can be made applicable. The trial court upheld the constitutionality of the statute and denied appellants' request for an injunction.

This appeal involves the constitutional validity of a statute of the State of Missouri. Exclusive appellate jurisdiction is vested in this Court under Article V, section 3, Missouri Constitution. We hold that those portions of Section 137.115.1(2) purporting to establish different procedures for adjusting *ad valorem* taxes in political subdivisions in St. Louis County and the City of St. Louis than apply to political subdivisions elsewhere in Missouri violate Article III, section 40(30). Accordingly, we reverse the judgment of the trial court and remand the cause for entry of a judgment in favor of the appellants.

## I.

The facts are stipulated. The School District of Riverview Gardens (the District) is a political subdivision of the State of Missouri, operating wholly within St. Louis County, Missouri. The District is organized to provide a free, public education to school-aged residents of the District and in pursuit of that enterprise, possesses the power to levy *ad valorem* taxes against property lying within the District. The District, together with four taxpayers who own real property within the District and whose children attend district schools, and two minors, who are students within the District and who are represented by an appointed next friend, brought this action challenging the constitutional validity of Section 137.115.1(2). These plaintiffs, now appellants before this Court, claim that that statute violates numerous provisions of the Missouri Constitution as well as the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The defendants, respondents before this Court, are St. Louis County, the St. Louis County Collector, and the State Auditor of Missouri.

Section 137.115.1(2) is fully set out in the appendix. It purports to establish procedures by which all political subdivisions in Missouri may revise their tax levies following "implementation of an assessment and equalization maintenance plan." The statutory scheme applicable to most of the political subdivisions of the state requires a political subdivision to revise its levy immediately following the implementation of an assessment and equalization plan to produce "the same amount of tax revenue as was produced in the previous year." In every political subdivision except "those the greater part of which is located in first class charter counties adjoining any city not within a county [St. Louis County] or any city not within a county [the City of St. Louis]," the governing body of a political subdivision may adjust the levy to account for inflation without voter approval "provided that the consumer price index ... shall not exceed five percent." In St. Louis County and the City of St. Louis, the governing body of a political subdivision may adjust its tax levy for inflation under two circumstances: First, the consumer price index has not risen more than five percent; and second, the voters of the political subdivision have previously granted that governing body the authority to increase the levy by a majority vote. If the voters do not grant the board of directors of the political subdivision that authority, the political subdivision may not adjust its levy to account for inflation and must maintain the same gross tax revenue from year to year.

Appellants claim that the District was prohibited by Section 137.115.1(2) from revising its tax rate to allow for changes in the general price level. The general price level, as measured by the consumer price index, increased by 3.8 percent for the 12–month period preceding the 1987 adjustment in the District's tax levy. Despite the impact of inflation, Section 137.115.1(2) required the District to reduce its levy by 12 cents per $100 of assessed valuation and resulted in the loss to the District of approximately $225,000 in property tax revenue for the fiscal year 1987–1988.

Following the completion of the assessment and equalization maintenance plan by St. Louis County in 1989, and despite an increase in the consumer price index of 5.4 percent, the District again reduced its tax rate by 11 cents per $100 of assessed valuation. This resulted in a loss of an additional $217,000 in annual revenue to the District. The appellants contend that had the District been in any county of the state other than the City of St. Louis or St. Louis County, it would have been permitted to adjust its tax levy without a vote of the people and would not have suffered a loss of revenues.

The District has not held an election seeking voter approval pursuant to Section 137.115.1(2). Appellants argue that this election, even if successful, would do no more than put the District on the same legal footing as other political subdivisions in Missouri that are not in St. Louis County or the City of St. Louis for purposes of adjusting the District's *ad valorem* tax rate. Appellants thus claim that the statute is facially unconstitutional and seek a judicial declaration to that effect. The trial court found the statute constitutional. This appeal followed.

## II.

Article III, section 40, provides in pertinent part that "[t]he general assembly shall not pass any local or special law: ... (30) where a general law can be made applicable." The constitution further provides that the question "whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject." Art. III, § 40(30).

Two tests are required to determine the constitutionality of the provision under scrutiny: First, is the law a special or local law? Second, if so, is the vice that is sought to be corrected, the duty imposed, or the permission granted by the statute so unique to the persons, places, or things classified by the law that a law of general applicability could not achieve the same result?

## A.

Are the provisions of Section 137.-115.1(2) affecting the Riverview Gardens School District special or local laws? In 1880, this Court considered a statute requiring the judges of the circuit courts in cities having over 100,000 inhabitants to award the printing of legal notices to newspapers only upon competitive bid. The Court in holding that the statute in question was not a special law relied on the distinction drawn in distinguishing between general and special laws by the Pennsylvania courts: " '[A] statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special,' and that classification does not depend on numbers." *State ex rel. Lionberger v. Tolle,* 71 Mo. 645, 650 (1880), quoting *Wheeler v. Philadelphia,* 77 Pa. 338, 348 (1875). The Court held that application of the law to the class of cities having a specified population level rendered the law general, not special. This was so, even though only the City of St. Louis fit the category; it was sufficient for the Court that other cities might reach that population level and that the law would apply to those cities.

This rationale was further explicated in *Fire District of Lemay v. Smith,* 184 S.W.2d 593 (Mo. banc 1945). There the legislature adopted a statute providing for the incorporation of fire districts in counties having a population between 200,000 and 400,000. Although only St. Louis County fell within those population param-

eters, this Court held that "this fact alone does not make the act a special law because the act will also apply to other counties which ... attain the same population in the future." *Id.* at 595.

*Walters v. City of St. Louis*, 364 Mo. 56, 259 S.W.2d 377, 382–3 (1953), *aff'd* 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954), broadened the definition of a general law further. The Court again held that legislation classifying political subdivisions by population is not special or local, even if the permission granted the political subdivision by the statute is of limited duration, "so long as it applies to all within, or that may come within, the enumerated class during its effective period." *Id.* at 383. The Court reasoned that classification based on population permits "the rule of 'open-endedness' to legislation pertaining to cities (or counties or other subdivisions)." *Id.* at 382. This "open-endedness" allows the legislature to address the unique problems of size with focused legislation; it also permits those political subdivisions whose growth or decline brings them into a new classification the advantage of the legislature's previous consideration of the issues facing similarly situated governmental entities. *Walters* stands for the proposition that statutes establishing classifications based on population are general laws, even when it appears with reasonable certainty that no other political subdivision will come within that population classification during the effective life of the law. Only where the statutory classification is arbitrary and without a rational relationship to a legislative purpose has this Court found a law founded on open-ended criteria unconstitutional. *Walters*, 259 S.W.2d at 382; 73 Am.Jur.2d, *Statutes*, §§ 272–74 (1974).

Applying the standards adopted by this Court to determine whether a law is local or special, we hold that the exceptions created in Section 137.115.1(2) constitute special legislation. Section 137.115.1(2) purports to establish a procedure relating to tax levy adjustment upon assessment of real property applicable to each of the political subdivisions of the state. Within the general provisions are exceptions for political subdivisions "the greater part of which is located in first class charter counties adjoining any city not within a county or any city not within a county." The classification established in Section 137.115.1(2) is neither open-ended nor rationally related to a legitimate legislative purpose; it is founded on a unique, constitutionally-sanctioned form of government recognized for the City of St. Louis by Missouri Constitution Article VI, section 31, or mere geographic proximity to the City of St. Louis. As to the former, we do not believe that a classification open to other political subdivisions only upon a change in the constitution is open-ended in the same sense as a classification based on population or assessed valuation. As to the latter, while geographic considerations might justify a statutory classification under some circumstances, e.g., flood control, this classification bears no rational relationship to procedures for tax levy adjustments following reassessment. Indeed, for purposes of tax levy adjustment, there is no rational argument which explains the conspicuous absence of the Kansas City metropolitan area from the statute's exclusions.

### B.

Could a general law be made applicable to the subject addressed by the legislature in Section 137.115.1(2) instead of the special law adopted? It is readily apparent that the procedures for reassessment imposed generally under Section 137.115.1(2) could apply equally well to the political subdivisions located in St. Louis County and of the City of St. Louis. As we have previously stated, no rational basis exists for the disparate treatment accorded St. Louis County and the City of St. Louis in Section 137.115.1(2). Thus, the constitutional prohibition of Article III, section 40(30), is violated by the legislative adoption of a special law where a general law could be made applicable.

### III.

■ Finally, we consider whether the constitutionally offensive provisions of Sec-

tion 137.115.1(2) are severable. Section 1.140, RSMo 1986, provides:

The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed that the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

The purpose of Section 137.115.1(2) is to establish a procedure by which political subdivisions within the State of Missouri may adjust an *ad valorem* tax levy following implementation of an assessment and equalization maintenance plan within a county. If the provisions of the statute dealing with St. Louis County and the City of St. Louis are excised from the statute, there remains a complete plan by which all political subdivisions of the state may adjust their *ad valorem* tax rates following the implementation of an assessment and equalization maintenance plan. We hold that the provisions of Section 137.115.1(2) are neither essential to, inseparably connected with, nor so dependent upon, the unconstitutional provisions of that statute that it can be presumed that the legislature would have enacted the valid provisions without the void ones. Moreover, we find that the valid provisions of Section 137.-115.1(2), standing alone, are complete and capable of being executed in accordance with the legislative intent. In sum, we find that the unconstitutional provisions of Section 137.115.1(2) are severable.

## IV.

Attached as an appendix to this opinion is the entire text of Section 137.115.1(2). Those portions of the text which are italicized are declared unconstitutional. The portions of the statute which are not italicized remain in effect and now apply to all political subdivisions in the state.

## V.

The judgment of the trial court is reversed and the cause is remanded for entry of an order declaring the underlined portions of Section 137.115.1(2) unconstitutional and for such other and further proceedings as may be necessary and consistent with this opinion.

RENDLEN, COVINGTON, HOLSTEIN, BLACKMAR, JJ., and HIGGINS, Senior Judge, concur.

HAROLD L. LOWENSTEIN, Special Judge, concurs in result in separate opinion filed.

BENTON, J., not participating because not a member of the Court when case was submitted.

## APPENDIX

Section 137.115.1(2), RSMo Supp.1990

Whenever changes in assessed valuation resulting from implementation of an assessment and equalization maintenance plan within the county are entered in the assessor's books, the county clerk in all counties and the assessor of St. Louis City shall notify each political subdivision wholly or partially within the county or St. Louis City of the change in valuation, exclusive of new construction and improvements. Each political subdivision wholly or partially within the county or St. Louis City, including municipalities maintaining their own tax books, shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property, exclusive of new construction and improvement, substantially the same amount of tax revenue as was produced in the previous year, except that the rate may not exceed the greater of the rate in effect in the 1984 tax year; provided that political subdivisions, *except those the greater part of which is located in first class charter counties adjoining any city not within a county or any city not within a county*

may, upon action of the governing body, adjust the revised levy as provided by section 22 of article X of the constitution, provided that the consumer price index, as defined in subsection 5 of section 137.073, used in calculating tax rates under this section, shall not exceed five percent. *Provided, however, that the governing body of each political subdivision the greater part of which is located within any first class charter county adjoining any city not within a county or any city not within a county may submit to the voters at any municipal, primary or general election a referendum to allow the levy in each odd-numbered year to be revised as required by section 22 of article X of the constitution; provided, that the consumer price index as defined in subsection 5 of section 137.073, using calculating tax rates under this section shall not exceed five percent. The ballot of submission shall contain but need not be limited to the following language:*

*Shall the* .............. *(governing body) of* ..................... *(political subdivision) be allowed in any odd-numbered year to adjust the rate or rates of levy to increase the amount of the property tax revenue over the prior year as required in section 22, article X of the constitution, provided the percentage used for increased revenues shall not exceed five percent?*

___ YES
___ NO

*If a majority of the votes cast on the proposal by the qualified voters voting thereon are in favor of the proposal, then it shall be in effect. If a majority of the votes cast by the qualified voters voting are opposed to the proposal, then the governing body shall have no power to adopt and shall not resubmit the issue for at least two years. When setting its tax rates, each political subdivision opting to increase its tax revenues under this section shall include in the public notice required by section 67.110, RSMo, and 137.055, the amount of tax revenue the proposed tax rates will produce above the prior year's revenue, and the equivalent tax rate. A referendum to repeal the proposal may be submitted to the voters by majority vote of the governing body of the political subdivision, or a petition containing the signatures of at least ten percent of the qualified voters voting in the last gubernatorial election who reside in that political subdivision.* The provisions for setting and revising rates of levy under this section shall prevail in event of conflict with provisions of section 137.073 resulting from implementing an assessment and equalization maintenance plan in each odd-numbered year, and the revised rate determined under this section shall become the tax rate ceiling as defined under section 137.073 and such rate may be increased only in the manner provided by law and the constitution. The value of "new construction and improvements" shall include the additional assessed value of all improvements or additions to real property which were begun after and were not part of the prior year's assessment, except that the additional assessed value of all improvements or additions to real property which had been totally or partially exempt from ad valorem taxes pursuant to sections 99.800 to 99.865, RSMo, sections 135.200 to 135.255, RSMo, and section 353.-110, RSMo, shall be included in the value of "new construction and improvements" when they become totally or partially subject to assessment and payment of all ad valorem taxes. The governing body of any political subdivision in the state may levy a tax rate lower than its tax rate ceiling or limit set by this section and may subsequently increase its tax rate without voter approval to produce tax revenues equal to the amount of tax revenue that would have been available if the voluntary rate reductions had not been made and may make adjustments to compensate for increased total valuation subsequent to the voluntary rate reduction and shall make adjustments for reductions in total valuation. Such reduced revenues shall be considered and factored in as part of the "tax revenue as was produced in the previous year" used as a base in this section no matter in what year the governing body chooses to rein-

state its previous revenue level by increasing its tax rate as voluntarily reduced. The state auditor shall examine the revised levies and report his findings as to compliance with this section to the clerk of the county commission.

HAROLD L. LOWENSTEIN, Special Judge, concurring in result.

I concur in result. I would strike down the portion of the statute in question on equal protection grounds and also as special legislation. Actually there is little difference in the analysis for an equal protection violation and legislation deemed special. This is especially so where the classification does not "bear any reasonable relationship to the object to be accomplished." *Bopp v. Spainhower*, 519 S.W.2d 281, 286 (Mo. banc 1975).

> Whether a statute is challenged on equal protection or special legislation grounds, therefore, the standard of review is the same: Are the classifications created by the statute reasonable because these classifications are rationally related to achievement of the statute's legitimate goals in that particular condition or attribute upon which the classifications are based constitutes a plausible distinction between the classes in view of the statute's legitimate goals?

*County of Bureau v. Thompson*, 139 Ill.2d 323, 151 Ill.Dec. 508, 564 N.E.2d 1170 (1990).

The disputed portions of § 137.115.1(2) do constitute special legislation. There is no rational basis presented by the respondents why subdivisions in the first and third largest assessed areas in the state (St. Louis County $11.6 billion, St. Louis City $2.4 billion) are exempted from retaining the inflationary factor without a vote, while those in Jackson ($4.9 billion) and all others need not submit to a vote under the Hancock Amendment. Mo.Const. Art. X, § 22(a). The portion of the statute is invalid because the exception created a stated class omitted which those whose "relationship to the subject matter cannot by reason be distinguished from those included."

*State ex rel. Public Defender v. County Court of Greene County*, 667 S.W.2d 409, 412–13 (Mo. banc 1984).

In fact this is a classic case of an equal protection violation under the Fourteenth Amendment to the United States Constitution and its counterpart Article I, § 2 of the Missouri Constitution—the criteria used for special legislation, no "rational relationship to a legislative purpose" and "no rational basis ... for the disparate treatment," apply to equal protection.

Where no fundamental rights or suspect classifications are present, a rational basis test for the classification pertains. The question under equal protection analysis is whether the legislation bears some rational basis to a legitimate state purpose. *Labor's Educational & Political Club Independent v. Danforth*, 561 S.W.2d 339, 347 (Mo. banc 1978). *Mahoney v. Doerhoff Surgical Services*, 807 S.W.2d 503, 512 (Mo. banc 1991). The rational basis test applies to this case.

In matters of taxation the states are not compelled to adopt an iron rule of equal taxation. *Bell's Gap R. Co. v. Commonwealth of Pennsylvania*, 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892 (1890); *State ex rel. Jones v. Nolte*, 350 Mo. 271, 165 S.W.2d 632, 636 (banc 1942). In *Bopp v. Spainhower, supra,* the Court held a transportation sales tax for St. Louis County was for a legitimate purpose due to the immediate needs of a densely populated county with many cities, and it was "logical," and on a "reasonable basis" that the tax could be imposed by a vote of the County rather than of all the individual cities. *Id.* On the other hand in *Missouri Pacific Ry. Co. v. Kirkpatrick*, 652 S.W.2d 128 (Mo. banc 1983), the Court found "invidious discrimination" in a domestication or extra tax on the capital and surplus of a foreign corporation that was not placed on Missouri corporations. *Id.* at 130 and 131. The Court found, "the challenged statute serves no legitimate purpose," so it was unnecessary to answer the second prong of the test as to whether it was reasonable for the lawmakers to believe its use would promote that purpose. *Id.* at 133.

Counsel for the respondents heroically presented several explanations of the statute's disparate treatment in singling out St. Louis City and County. The following are provided as rational basis for promoting a valid state interest:

1) This is a reasonable attempt to meet local needs. The city's valuation of $2.4 billion and the County's of well over $11 billion put them in a classification far above the state's other counties as far as a tax base.

2) Real assessment growth in terms of new construction and improvements is relatively strong in the city and county.

3) Restraints on the *inflationary* growth of the tax burden on city and county taxpayers will:

a) promote long term economic growth (presumably more businesses moving to these areas because of restraint on inflationary revenues by the schools and other political subdivisions, and, b) protection of "taxpayers on limited or fixed incomes."

These arguments are a sophistic exercise and should not allow the state to make this arbitrary and unreasonable distinction in requiring only the political subdivisions of the City and County to hold an election to retain tax revenues equal to the agreed rate of inflation. *In re Ext. of Boundaries of Glaize Creek,* 574 S.W.2d 357, 363 (Mo. banc 1978). The only similarity the City and County have for the purposes of this legislation is they are located next to each other in the eastern part of the state. That puts them next to smaller valued but very rapid growth areas like St. Charles and Jefferson Counties.

This is not a case of approving a statutory classification based on a poor reason, *State ex rel. Dreer v. Public School Retirement System of City of St. Louis,* 519 S.W.2d 290, 298 (Mo.1975), it is a classification based on no apparent reason and in furtherance of no legitimate state interest. The law results in an "invidious discrimination," *Milliken v. Green,* 390 Mich. 389, 212 N.W.2d 711, 715 (1973), as against the schoolchildren-appellants. Persons in school throughout the state, no matter their county of residence, have been given a uniform right to have their schools keep these inflationary revenues. Persons in the City and County, standing in no different stead, and for no rational reason, have not been afforded the same right, bringing about a violation of equal protection. *Haeussler Inv. Co. v. Bates,* 306 Mo. 392, 267 S.W. 632, 636 (1924) *aff'd* 271 U.S. 647, 46 S.Ct. 487, 70 L.Ed. 1131 (1926); *State ex rel. Classics Tavern v. McMahon,* 783 S.W.2d 463, 466 (Mo.App.1990).

Making a "class" of the City and County or exempting them into having a more onerous burden than Jackson and all the others creates a distinction that cannot be explained or condoned on equal protection grounds. *Kirk v. Board of County Comm'rs, Muskogee County,* 595 P.2d 1334 (Ok.1979).

The students have standing on the special legislation issue as well as equal protection. *Seattle School Dist. No. 1 of King County v. State,* 90 Wash.2d 476, 585 P.2d 71, 83 (banc 1978). It would appear Riverview Gardens has standing on the special legislation issue, but not equal protection. *City of Chesterfield v. Director of Revenue,* 811 S.W.2d 375, 377 (Mo. banc 1991); *see also State ex rel. Mehlville Fire Protection Dist. v. State Tax Comm'n of Missouri,* 695 S.W.2d 518, 521 (Mo.App. 1985); *School District of the City of Independence v. Jones,* 653 S.W.2d 178, 185 (Mo. banc 1983); (citing art. IX, § 1(a), Mo.Const. (1945, as amended August 3, 1976)). The taxpayer plaintiffs do not have standing on either ground. *Harrison v. Monroe County,* 716 S.W.2d 263, 266 (Mo. banc 1986); *Berghorn v. Reorganized School Dist. No. 8,* 364 Mo. 121, 260 S.W.2d 573, 581 (1953).

In ruling the portions of the statute unconstitutional on equal protection and special legislation grounds, this decision should have only prospective application. *Scholle v. Carrollton R-VII School District,* 771 S.W.2d 336 (Mo. banc 1989).