**HUNTER AVENUE PROPERTY, L.P., et al., Plaintiffs/Appellants,**

v.

**UNION ELECTRIC COMPANY, et al., Defendants/Respondents.**

No. 66030.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 14, 1995.

Application to Transfer Denied
April 25, 1995.

issue in *Seibert* is identical to that of Rule 24.035 at issue here. *See* Rule 27.26(i) (repealed); Rule 24.035(i).

Carl J. Lumley, Curtis, Oetting, Heinz, Garrett & Soule, P.C., Clayton, for appellants.

Theodore H. Hellmuth, Timothy J. Tryniecki, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for Union Elec. Co.

Sarah A. Siegel, Anne E. Billings, Suelthaus & Kaplan, P.C., St. Louis, for City of Clayton.

PUDLOWSKI, Judge.

Hunter Avenue Properties (Hunter) and Coin Acceptors, Inc. (Coinco) appeal from summary judgment in the Circuit Court of Saint Louis County. Hunter and Coinco were seeking declaratory judgment regarding two ordinances enacted by the City of Clayton, Missouri (Clayton) granting Union Electric the right to build aboveground one 138,000 volt line and the ability to move one 34,500 volt line. Union Electric and Clayton sought and were granted summary judgment. This appeal followed.

■ We will review the facts in a light most favorable to Hunter and Coinco against whom Summary Judgment was entered. *ITT Commercial Finance Corp. v. Mid America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will accord Hunter and Coinco all reasonable inferences from the record. *Id.*

Hunter is a limited partnership doing business in the State of Missouri. It owns and has its principal place of business at the property commonly known as 300 Hunter Avenue in Clayton. This is also the location of the property in question. Coinco is a corporation with its principal place of business at 300 Hunter Avenue. Union Electric is a corporation engaged in the business of generating, transmitting, distributing and selling electricity throughout Saint Louis County, including Clayton.

The property at 300 Hunter Avenue is situated in and adjacent to the path of an abandoned Terminal Railroad right-of-way that runs north and south along the route of Interstate 170. The property is bounded on the east by the abandoned railroad right-of-way and the interstate on the west.

This case arose because Union Electric determined that it needed to construct the Marshall–Hunter transmission line (the line).

It is a new transmission line connecting the Marshall substation on Marshall Road west of the city of Kirkwood near Interstate 44 to the Hunter substation located in the City of Ladue. In constructing the line through Clayton, Union Electric faced an obstacle which did not exist elsewhere. Clayton had an ordinance which prohibited the aboveground construction of utility lines and poles. The ordinance read as follows:

Sec. 20–90. New poles and aboveground lines—Prohibited

It shall be unlawful for any person to erect or construct utility poles or lines for the transmission of electricity, telephone messages or other public utility transmissions above the surface of the ground within the confines of the city. (Code 1947, § 7–56.1)

Union Electric possesses the technical ability to comply with the mandate of the statute. However, because of the necessity to insulate any such underground line with highly pressurized oil, underground construction involves extensive extra work and more importantly significantly extra expense.

The Public Service Commission (PSC), through Rider Q, has authorized Union Electric to pass on the extra expense associated with underground construction to the ratepayers within the municipality requiring underground construction. This tariff allows Union Electric to collect the cost of burying lines from those to whom the benefit accrues. Union Electric has estimated that it will cost each Union Electric customer in Clayton approximately $13.70 extra per month through the life of the line if it were constructed underground.

Union Electric presented Clayton with the option. Union Electric agreed to either construct the line underground in accordance with Ordinance 20–90, or to build the line aboveground, thereby sparing the electrical customers in Clayton the extra burden on their bill.

The Clayton Board of Aldermen, after holding a public hearing, appointed a Study Committee to consider all of the relevant factors in determining how the line should proceed. The Study Committee held seven sessions and considered a wide range of issues. By majority vote, the Study Committee determined that Union Electric should be permitted to construct the line aboveground.

In response, the Board of Aldermen, on February 9, 1993, adopted Ordinance 4953:

AN ORDINANCE PROVIDING FOR THE AMENDMENT OF CHAPTER 20 ... EXCEPTIONS TO PROHIBITIONS, TO PROVIDE AN EXCEPTION FOR THE MARSHALL–HUNTER TRANSMISSION LINE.

.    .    .    .    .

Nothing contained in Section 20–90 shall prevent the erection, construction and maintenance of utility poles and lines above the surface of the ground of the Marshall–Hunter 138,000 volt transmission line project on and along the former Terminal Railroad right-of-way substantially in accordance with plans submitted by Union Electric Company to the City, however, in no event shall there be more than one such 138,000 volt transmission line and one additional 34,500 volt distribution line without the prior consent of the City.

Prior to enactment of the above ordinance, the Board of Aldermen did not consult with the Planning and Zoning Commission, the Board of Adjustment nor the Architectural Review Board.

Subsequently, on March 9, 1993, the Board of Aldermen repealed Ordinance Number 4953 and passed an amended ordinance. The new Ordinance Number 4959, passed on March 9, 1993, read as follows:

AN ORDINANCE PROVIDING FOR THE AMENDMENT OF CHAPTER 20 ... TO PROVIDE FOR AN EXCEPTION FOR A TRANSMISSION LINE.

.    .    .    .    .

Nothing contained in Section 20–90 shall prevent the erection, construction and maintenance of one 138,000 volt transmission line and the relocation of one existing 34,500 volt distribution line along the former Terminal Railroad right-of-way.

After passage of the amended ordinance, appellants attacked Union Electric's construction of the line. On two separate occasions,

Hunter and Coinco filed an administrative complaint with the PSC alleging abuse of discretion in locating the line. Both times, the complaints were dismissed by the PSC. After each dismissal, Hunter and Coinco filed an application for rehearing before the PSC. Both times the application was denied. Following the denials, Hunter and Coinco filed a Petition for Review of the PSC action in the Circuit Court of Cole County. Each time the decision of the PSC was affirmed.

On July 2, 1993, Union Electric filed its Petition in Condemnation in the Circuit Court of Saint Louis County seeking to condemn an easement over a portion of Appellants' parking lot. On August 17, 1993, Hunter and Coinco, as defendants, in the condemnation proceeding, filed a Motion to Dismiss or Stay proceedings. The Motion attacked the Clayton Ordinances on substantially the same grounds as are asserted in this cause of action. Hunter and Coinco also filed a motion to join Clayton as a party to the proceeding. On September 2, 1993, the condemnation court overruled both motions and ordered condemnation of the property.

On January 6, 1994, the Condemnation Commissioners held a hearing to determine damage to the property from the condemnation and construction of the line. Hunter and Coinco appeared and presented appraiser testimony to the Commissioners regarding the damage to their property. The Commissioners awarded damages of $300,000. Union Electric promptly paid that amount into the court registry and took title to the easement property on January 21, 1994.

On September 15, 1993, Hunter and Coinco filed a Petition for Writ of Prohibition with our court challenging the Circuit Court Order of Condemnation and the denial of their Motion. We denied the Writ on September 27, 1993.

On October 22, 1993, Hunter and Coinco filed their petition for Declaratory Relief against Union Electric and Clayton. It sought the declaration of Clayton Ordinances 4959 and 4953, and the permit issued thereto, unconstitutional special legislation adopted in violation of the city's established procedures. Hunter, Coinco, Union Electric and Clayton all filed separate motions for summary judgment.

On March 21, 1994, the trial court denied the Hunter and Coinco motions and granted Clayton's and Union Electric's motions. On March 25, 1994, Hunter and Coinco filed a motion asking the trial court to amend its decision and rule expressly on the various issues presented. On April 9, 1994, the trial court granted that request in part and affirmed in all respects its order of March 21, 1994. In its order, the court rejected Union Electric's and Clayton's procedural defenses that: 1) Hunter and Coinco lacked standing; 2) Hunter and Coinco failed to exhaust their administrative remedies; 3) Hunter and Coinco were barred by Res Judicata or Estoppel; and 4) Hunter and Coinco had an adequate remedy at law. The court further held, relying on *School District of Riverview Gardens v. St. Louis County*, 816 S.W.2d 219 (Mo. banc 1991) and *O'Reilly v. City of Hazelwood*, 850 S.W.2d 96 (Mo. banc 1993), the ordinances were "special legislation" and, therefore, presumed unconstitutional. The court found, after reviewing the evidence, the circumstances before the Clayton Board of Aldermen to be unique such that general legislation would be inappropriate. This appeal follows.

The threshold issue we must address is whether Clayton properly enacted the ordinances in question. Hunter and Coinco aver that Clayton did not follow the proper procedures for enacting an ordinance inasmuch as the Board of Aldermen failed to involve: 1) the city plan commission, in its capacity as overseer of the City's Master Plan; 2) the city plan commission, in its capacity as zoning commission; 3) the Board of Adjustment, as issuer of zoning variances; and 4) the Architectural Review Board, as reviewer of building permits. Hunter and Coinco argue that each of these boards and commissions should have reviewed and approved the ordinance and absent that approval, the ordinances were invalidly enacted.

It is clear from the record that none of the boards and commissions mentioned did in fact review the ordinance or the proposed project. The issue is whether they were

required to do so in order to validly enact the ordinance.

◼ In regard to the city plan commission, in its capacity as overseer of Clayton's master plan, Article IX, Section 2, entitled "Powers and Duties," states:

the city plan commission shall have the authority and the duty to submit to the board of aldermen for its approval a master plan for the development of the city.... The plan shall include ... together with the general location of ... public utilities.... The commission shall recommend such modifications of the master plan, from time to time, as it deems in the city's interest....

Nothing in the Section requires that the city plan commission review or approve ordinances affecting the master plan generally or the location of utilities specifically. Hunter and Coinco claim that there is a policy in Clayton regarding the undergrounding of utility lines. Assuming such a policy exists, it does not mandate that the city plan commission review or approve the ordinance in question. We find no such requirement in the Clayton charter. Therefore, the ordinances were not invalidly enacted because the city plan commission, in its capacity as overseer of the master plan, did not review nor approve the ordinance or the new transmission line.

◼ Hunter and Coinco next argue that the city plan commission, in its capacity as zoning commission had to review and approve the ordinance. We disagree. The ordinance in question is not a zoning ordinance. Article I, Chapter 20 of the Clayton City Code is not part of the zoning ordinance. The zoning ordinances are contained in Chapter 22 of the City Code entitled "Zoning". Chapter 20 is entitled "Streets, Sidewalks and Public Ways". Because the ordinance was an amendment to Chapter 20, not Chapter 22, the board did not need to consult the city plan commission, in its capacity as zoning commission.

◼ Hunter and Coinco aver that the Clayton Board of Adjustment should have been consulted regarding the ordinance. Article IX, Section 5 states that "[t]he board shall have such powers and duties as are provided by law and ordinance." Section 22–43 of the Clayton City Code, which lists the powers of the Board of Adjustment, does not state anything relating to Section 20–90 of the code, explicitly or implicitly. Accordingly, the Board of Adjustment did not have to be consulted by the Board of Aldermen prior to the enactment of the ordinance in question.

◼ Hunter and Coinco next claim that the Architectural Review Board should have reviewed and approved the ordinance. The section of the legal file which Hunter and Coinco cite for their proposition that the Architectural Review Board should have been involved appears to apply only to buildings and their exteriors, not public utilities' installation. Regardless of whether or not the Architectural Review Board has jurisdiction over public utilities' installation, there is a provision by which a party who is unhappy with the Review Board's decision may appeal to the Board of Aldermen. Since it was the Board of Aldermen who approved the ordinance which empowered Union Electric to build the new transmission line, Hunter and Coinco were not harmed.

Moreover, all of the boards and commissions, which Hunter and Coinco argue were bypassed, were designed to ensure that proper debate, discussion and review of proposed plans take place. Hunter and Coinco cite cases for the general proposition that a city must follow the organic law established by its charter and ordinances, or its actions are void. *See e.g., Schmoll v. Housing Authority of St. Louis*, 321 S.W.2d 494, 498 (Mo.1959). They also cite *Hatfield v. Meers*, 402 S.W.2d 35, 45 (Mo.App.1966) for the statement that boards and commissions such as the ones in question in this case are designed to induce deliberation and are therefore mandatory. It is clear from both the Board of Aldermen meetings considering the ordinance and the Study committee report which resulted from seven meetings of that group that proper consideration was given to the entire range of issues involved with this project. The protection that the various boards and commissions would have afforded to Hunter and Coinco, had it been necessary to consult

them, was more than adequately supplied by the Study committee meetings and report and the Board of Aldermen discussions and debates over the issue. Therefore, we hold that, notwithstanding the fact that Clayton did not violate any of its internal procedures, its charter or its ordinances, the ordinance was properly enacted.

▇ We next address Hunter and Coinco's main point on appeal: the ordinances enacted by Clayton are unconstitutional. The thrust of their argument is that the ordinances are "special legislation" which deals with matters that could have been dealt with through general legislation.

▇ The Missouri Constitution, Article III, Section 40, subsections (28) and (30) state as follows:

> Section 40. The general assembly shall not pass any local or special law. . . .
>
> (28) granting to any corporation, association, or individual any special or exclusive right, privilege or immunity. . . .
>
> (30) where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject.

It is a well established rule of law that this proscription applies with equal force to municipalities and their ordinances as it does to the general assembly. *See e.g. Wilson v. City of Waynesville,* 615 S.W.2d 640, 644 (Mo.App.1981) and cases cited therein.

The Supreme Court of Missouri, in *School District of Riverview Gardens,* 816 S.W.2d 219, set out two tests for determining whether or not a statute or ordinance violates the constitutional prohibition against special legislation. "First is the law a special or local law? Second, if so, is the vice that is sought to be corrected, the duty imposed, or the permission granted in the statute so unique to the persons, places or things classified by the law that a law of general applicability could not achieve the same result?" 816 S.W.2d at 221.

▇ We must first determine if the ordinances enacted by the city of Clayton are special legislation within the meaning of the term as defined by the courts of this state. Legislation is general if it applies to everyone in a certain class or special if it applies only to particular members of the class. *Id.* at 221–221. In order for a law to not be classified as special legislation, it must apply equally to all members of a class and that class must not have been determined arbitrarily or without a reasonable basis. *State ex. rel. Public Defender Comm'n v. County Court of Greene County,* 667 S.W.2d 409, 412 (Mo. banc 1984).

The class in this case is determined by looking to the ordinance from which the exemption is granted, *i.e.* Section 20–90. Section 20–90 states, in pertinent part, that "[i]t shall be unlawful for **any person** to erect or construct utility poles or lines for the transmission of **electricity, telephone messages or other public utility transmissions. . . .**" (emphasis supplied). Thus, the class consists potentially of all public utility companies, including electric and telephone companies.

The ordinance which is currently in effect, Number 4959, reads as follows:

AN ORDINANCE PROVIDING FOR THE AMENDMENT OF CHAPTER 20 . . . TO PROVIDE FOR AN EXCEPTION FOR A TRANSMISSION LINE.

. . . . .

Nothing contained in Section 20–90 shall prevent the erection, construction and maintenance of one 138,000 volt transmission line and the relocation of one existing 34,500 volt distribution line along the former Terminal Railroad right-of-way.

The ordinance clearly refers to one 138,000 volt line, one 34,500 volt line and the location of the Marshall–Hunter line. This is clearly an exception which could relate only to an electric company and in fact, Union Electric. Union Electric is the only licensed franchisee in Clayton and because the building permit was issued prior to this version of the ordinance ever being enacted, the exception, due to its extremely closed-end nature, was used permanently by Union Electric simultaneously with its enactment. After the permit was issued and the line built, the exception was

used and could never apply to anyone but Union Electric.

The original ordinance which granted the exception also clearly restricts the ordinance to electric companies.

... TO PROVIDE AN EXCEPTION FOR THE MARSHALL–HUNTER TRANSMISSION LINE.

. . . . .

Nothing contained in Section 20–90 shall prevent the erection, construction and maintenance of utility poles and lines above the surface of the ground of the Marshall–Hunter 138,000 volt transmission line project on and along the former Terminal Railroad right-of-way substantially in accordance with plans submitted by Union Electric Company to the City, however, in no event shall there be more than one such 138,000 volt transmission line and one additional 34,500 volt distribution line without the prior consent of the City.

This ordinance which was amended by the one currently in effect clearly delineates not only that it applies to a certain voltage of line but also states by name the Marshall–Hunter line and Union Electric.

Furthermore, the Board of Aldermen commissioned the Study Committee to review the project in detail. The committee only considered information relating to Union Electric and the Marshall–Hunter project. In its report, entitled "REPORT TO THE MAYOR AND BOARD OF ALDERMEN CONCERNING PROPOSED UNION ELECTRIC TRANSMISSION LINE BETWEEN MARSHALL AND HUNTER SUBSTATIONS," the Study Committee recommended that "... the City of Clayton should grant Union Electric a waiver of its underground ordinance and permit Union Electric to install one 138,000 volt line above ground as proposed by the company." Clearly, Clayton considered only Union Electric and this one time exception to Ordinance 20–90.

Moreover, on March 3, 1993, in a letter to Union Electric's engineer in charge of transmission line design, the Clayton City Manager issued a permit to Union Electric with the following admonitions:

... I am authorizing the issuance of a construction permit to allow Union Electric to proceed with its Marshall–Hunter transmission line project within the parameters outlined below:

. . . . .

This authorization should be in no way interpreted as a precedent setting variance for the placing of other utility lines above ground.

It is also important to note that the construction permit is limited to the two lines noted above. The "future" 138,000 volt line and 34.5 volt distribution line are not approved and it will be necessary for Union Electric to return to the city to seek approval for any future lines that you propose to place above ground. The parameters of this permit are limited in accordance with the Resolution adopted by the Board of Aldermen and the ordinance that is expected to be adopted by the Board of Aldermen on March 9, 1993.

We continue to be interested in exploring with Union Electric the feasibility of burying all distribution lines associated with the Marshall–Hunter project.

. . . . .

We look forward to working with Union Electric to help you address your need for the new transmission line while also demonstrating sensitivity to our desire to minimize the visual clutter associated with the utility lines and the potential health risks associated with electromagnetic fields.

From this letter, the Study committee reports, the express language of both the original and the current versions of the ordinance, it is clear that this is special legislation. It applies only to Union Electric, only to construction of the Marshall–Hunter line and only to one 138,000 volt line and one 34,500 volt line.

■ A law that is special legislation is presumed to be unconstitutional. The party defending the facially special statute must demonstrate a "substantial justification" for the special treatment. *Harris v. Missouri Gaming Comm'n,* 869 S.W.2d 58, 65 (Mo. banc 1994). This is essentially the same test

as set out by the Supreme Court in *School District of Riverview Gardens*, 816 S.W.2d 219, which requires that the "... permission granted is so unique that a law of general applicability could not achieve the same result." 816 S.W.2d at 221.

■ Facts set forth by affidavit or otherwise in support of Union Electric's and Clayton's summary judgment motion will be taken as true unless contradicted by Hunter's and Coinco's response to the motion. *ITT Commercial Finance Corp. v. Mid America Marine Supply Corp.*, 854 S.W.2d at 376. Union Electric offered the affidavit of David Whiteley, Manager of Union Electric's Transmission Planning Department. His affidavit set out the following facts:

1) the poles in question are used only by electric companies, particularly their height of 110 to 130 feet;

2) only an electric company has need for a 138,000 volt line and only Union Electric in Clayton has the need to construct such a line;

3) Union Electric is the only electric company certificated by the PSC to provide service to Clayton;

4) other utility companies, particularly cable and telephone companies, virtually never use a pole that is higher than 40 feet tall;

5) electric companies generally use shorter poles for lower voltage lines;

6) underground construction of a 138,000 volt line poses special engineering problems which are not faced when burying lines of lower voltage, in particular a high-pressure oil insulation system with its own pumping station is required;

7) the additional cost of burying the cable underground would be an estimated $6,000,000 or $13.70 per customer per month over the expected life of the line.

These facts are uncontradicted by Hunter and Coinco. Instead, they attack the ordinances granting the exception by claiming that the same result could have been achieved by general legislation. We disagree.

The facts set out in the affidavit show a unique set of circumstances which is unlikely to arise again in the near future. Although cost appears to be the major factor, there were other factors, according to the Study Committee report, including health concerns, property values and aesthetics which ultimately led to the decision by Clayton to grant the exception. The size of the utility poles and the voltage of the line are not typical of those installed by Union Electric for distribution. They are different than the typical pole used by any other utilities. A typical utility line does not require the high-cost insulation system that an underground transmission line of this voltage requires. In addition, the proposed location of the line along the abandoned railroad right-of-way is uniquely suited to allowing an exception to the general rule. Other electric lines which predate Ordinance 20–90 are already in the right-of-way, it is on the far western border of Clayton and does not cause aesthetic problems that might occur if it cut through the heart of the city.

The underground placement of the transmission line in question involved a difficult and costly procedure. Although Union Electric apparently had the technology to bury the line, according to the Study Committee report, it would have been the first time that it had actually done so. The cost, which would ultimately be borne by the Union Electric customers in Clayton, was only an estimate and could have been significantly higher.

Hunter and Coinco cite the following cases involving special legislation: *School District of Riverview Gardens*, 816 S.W.2d 219, (statute prescribing special tax reassessment procedures for Saint Louis County and City (but not Kansas City) was unjustified special legislation); *Wilson v. City of Waynesville*, 615 S.W.2d 640, (portion of ordinance which prohibited limousines but not cabs or buses from disembarking at any location but one was unreasonable and arbitrary and thus, unenforceable as a special law); *Harris v. Missouri Gaming Comm'n*, 869 S.W.2d 58 (exceptions in Missouri's Riverboat Gambling Law are special legislation creating presumption of unconstitutionality which may be overcome by showing of substantial justification); *Planned Industrial Expansion Au-*

*thority of the City of St. Louis v. Southwestern Bell Telephone Co.,* 612 S.W.2d 772 (Mo. banc 1981) (statute creating vested easement for telephone companies but not other utilities was unconstitutional special legislation). Due to the significant factual differences between the instant case and the cited cases, we do not find them particularly persuasive.

Therefore, we hold that despite the fact that Clayton Ordinance 4959 is special legislation, the construction of the Marshall–Hunter line through Clayton presents a unique set of facts which substantially justify the exception.

Affirmed.

SMITH, P.J., and SIMON, J., concur.