# SUPREME COURT OF MISSOURI
## en banc

JEFFERSON COUNTY 9-1-1 DISPATCH, ) *Opinion issued April 26, 2022*
             )
       Respondent, )
             )
v.            ) No. SC98904
             )
JOSEPH G. PLAGGENBERG, ACTING )
DIRECTOR OF THE MISSOURI   )
DEPARTMENT OF REVENUE,   )
             )
       Appellant.  )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Patricia S. Joyce, Judge

Respondent, Jefferson County 9-1-1 Dispatch (the "Dispatch"), filed an action seeking a declaratory judgment, a writ of mandamus, and injunctive relief preventing Appellant, the Director of the Department of Revenue ("DOR"), from enforcing section 190.327.5.[1] The Dispatch argued it was entitled to such relief because section 190.327.5 violates three different provisions of the Missouri Constitution but only sought – and the circuit court only granted – summary judgment on one of those claims. The other two claims were not denied or dismissed. They remain pending. DOR appeals.

---

[1] All statutory references are to RSMo Supp. 2019 except for references to section 512.020, which are to RSMo 2016.

The circuit court's judgment is not a "final judgment" for purposes of section 512.020(5). It is not a "final judgment" in the sense that it does not dispose of all (or at least the last) claims in the lawsuit, and it was not eligible to be certified as "final" under Rule 74.01(b) because it did not resolve all of the claims by or against at least one of the parties, nor did it resolve one or more claims that are sufficiently distinct from those that remain pending. *Wilson v. City of St. Louis*, 600 S.W.3d 763, 765 (Mo. banc 2020). Finally, even if the judgment were eligible to be certified under Rule 74.01(b), neither party sought such certification and the circuit court did not certify the judgment or make the requisite finding "that there is no just cause for delay." Rule 74.01(b). Accordingly, this Court must dismiss DOR's appeal for want of jurisdiction.

## Background

In April 2009, Jefferson County voters voted to replace an existing emergency telephone tax with a sales tax of one-half of one percent for 10 years for the purpose of providing emergency services, including central dispatching for fire protection, law enforcement, and ambulance services. Ten years later, the voters approved continuing the one-half of one percent sales tax for emergency services.

On July 19, 2019, the Governor signed Senate Bill No. 291 ("SB 291") into law. SB 291 amended section 190.327 by adding a new subsection. This new subsection reads:

> An emergency services board originally organized under section 190.325 operating within a county with a charter form of government and with more than two hundred thousand but fewer than three hundred fifty thousand inhabitants shall not have a sales tax for emergency services or for providing central dispatching for emergency services greater than one-

2

quarter of one percent. If on July 9, 2019, such tax is greater than one-quarter of one percent, the board shall lower the tax rate.

§ 190.327.5.

On August 1, 2019, DOR notified the Dispatch of its intent to decrease the existing one-half of one percent sales tax to one-fourth of one percent beginning October 1, 2019. In response, the Dispatch filed the present action. The Dispatch arranged its petition in four "counts." The first sought a declaratory judgment that section 190.327.5 is unconstitutional because it violates either article III, section 40 or article III, section 42 of the Missouri Constitution pertaining to local or special laws. The second sought a declaration that section 190.327.5 is unconstitutional because it violates article I, section 13, which prohibits laws retrospective in operation. In Count III, the Dispatch requested a writ of mandamus compelling DOR not to follow the unconstitutional statute and, instead, to continue to collect the one-half of one percent emergency services sales tax and pay it to the Dispatch. In Count IV, the Dispatch requested a preliminary and permanent injunction compelling DOR to continue to collect the one-half of one percent emergency services sales tax and pay it to the Dispatch for the same reason.

On July 31, 2020, the Dispatch moved for summary judgment only with respect to its claim that section 190.327.5 violated article III, section 42, which imposes unique notice and publication requirements prior to the legislature passing any local or special law that is not otherwise prohibited by article III, section 40. DOR responded and filed a cross-motion for summary judgment. On November 30, 2020, the circuit court overruled

3

DOR's motion, sustained the Dispatch's motion, and entered judgment for the Dispatch on its claim pertaining to article III, section 42. This judgment did not resolve the Dispatch's other claims, nor did the Dispatch dismiss them. They remain pending.

## Analysis

Before addressing the merits of this appeal, "this Court has a duty to determine whether it has jurisdiction." *Wilson,* 600 S.W.3d at 765. "The right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists.*" Id.* at 767 (quotation marks omitted). The only statute even potentially applicable to this case is section 512.020(5), which provides that a "final judgment" is appealable. The judgment in this case is not a "final judgment" for purposes of this statute.

A judgment is a "final judgment" for purposes of section 512.020(5) if it disposes of all claims (or the last pending claim) in a lawsuit. *Wilson*, 600 S.W.3d at 771. A judgment that is not a "final judgment" in this traditional sense can still be a "final judgment" for purposes of section 512.020(5) if it is eligible to be – and actually is – certified as such by the circuit court under Rule 74.01(b). *Id.* Neither party contends this judgment was (or even could have been) certified as a "final judgment" under Rule 74.01(b), and rightly so. This judgment was not eligible to be certified under Rule 74.01(b) and the circuit court did not certify it or make the predicate finding that there was no just reason for delay. Accordingly, the analysis in this case turns entirely on whether the judgment disposes of all claims by and against all parties in this suit. Plainly, it does not.

4

The circuit court's order in this case is a judgment because it met the form requirements in Rule 74.01(a) and it fully resolves the Dispatch's claim that section 190.327.5 violates article III, section 42 of the Missouri Constitution.[2]  But it is not a "final judgment" for purposes of section 512.020(5) because that is the only one of the Dispatch's three claims that it resolves.  The Dispatch's claim that section 190.327.5 violates the complete prohibition for certain types of local or special laws found in article III, section 40, as well as its claim that this statute violates the prohibition against laws that are retrospective in their operation found in article I, section 13, remained (and still remain) pending.

"[I]n determining whether an action presents more than one claim for relief, the focus is on the number of legal rights asserted in the action." *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994) ("*CEE*").  If a petition "seeks to enforce only one legal right, it states a single claim, regardless of the fact that it seeks multiple remedies." *Id*.  Here, the Dispatch's petition sought to enforce at least three legal rights: (a) the constitutional prohibition against certain local or special laws under article III, section 40; (b) the constitutional requirement that local or special laws that are not prohibited outright by article III, section 40 nevertheless cannot be passed without prior notice by publication as set forth in article III, section 42; and (c) the constitutional

---

[2]  The substantive definition of judgment is "a legally enforceable judicial order that fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim." *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019).  As a matter of form, such an order must be in writing, signed by the judge, and denominated a "judgment" or "decree" to be considered a judgment.  Rule 74.01(a).

prohibition against the enactment of statutes that are retrospective in their operation found in article I, section 13. The Dispatch's prayers for declaratory judgment, mandamus, and/or an injunction are merely the remedies the Dispatch seeks should it prevail in its efforts to enforce one or more of these three legal rights.

The parties argue that, because the Dispatch sought the same remedies for each of these three plainly different claims, a judgment granting that relief with respect to one claim necessarily disposes of all the other claims and, therefore, is a "final judgment" for purposes of section 512.020(5). Such reasoning might have led the Dispatch to dismiss its remaining claims or to ask the circuit court to deny them on the ground that they were moot. But the Dispatch was under no obligation to do either and plainly did not do so.

The parties point to language in the judgment stating it was "a final judgment that resolves all issues as to all parties." But this does not make it so. The Dispatch's motion did not seek judgment on all of its claims, and nothing in the judgment suggests the circuit court intended to resolve the remaining claims on their merits or deny them as moot in light of the resolution of the Dispatch's claim under article III, section 42. Instead, the Dispatch's remaining unresolved claims are just that: unresolved and still pending in the circuit court. The parties conceded at oral argument that, if this Court were to determine the circuit court erred with respect to the Dispatch's claim under article III, section 42, they would return to the circuit court to take up the Dispatch's remaining claims. Presumably, once another of those claims is resolved, the aggrieved party would appeal, and so on and so on virtually assuring multiple, seriatim appeals. This is the very antithesis of the "final judgment" that is appealable under section 512.020(5).

6

The parties cite *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012),[3] for the proposition that any judgment is appealable under section 512.020(5) as a "final judgment" if it resolves "all issues in a case, leaving nothing for future determination." Where the parties fail, however, is in explaining how a judgment sustaining the Dispatch's motion for summary judgment that was based on only one of the Dispatch's three claims resolves "all issues" in the case and leaves "nothing" to be determined in the future. Plainly, it does not resolve whether section 190.327.5 violated the prohibition against certain types of local and special laws found in article III, section 40. Nor does it resolve whether this statute violates the prohibition against laws retrospective in their application found in article I, section 13. The Dispatch's petition unmistakably asserts these claims and, just as plainly, neither claim is referenced – let alone resolved – in the circuit court's judgment.[4]

---

[3]  The parties also cite to *CEE*, arguing the flaw in that case, i.e., that the order resolved only some of the remedies sought with respect to a claim but failed to resolve the request for other remedies on the same claim, is not present here because the circuit court's judgment addressed all of the remedies the Dispatch sought with respect to its claim under article III, section 42 and left nothing for the Dispatch to gain as a practical matter by pursuing its remaining claims. That the Dispatch may have lost its motivation to pursue its remaining claims does not mean that those claims were resolved by the circuit court's judgment or that they are not still pending – unresolved – in the circuit court.

[4]  In *Boley v. Knowles*, 905 S.W.2d 86, 88 (Mo. banc 1995) (footnote omitted), this Court stated, "if the order disposed of one 'claim for relief,' the order is a final judgment and this Court has jurisdiction." *Bolely* refers only to judgments certified as "final" under Rule 74.01(b) and, in that context, it is a correct statement. Unfortunately, this context was lost when, in *State ex rel. Hilburn v. Staeden*, 62 S.W.3d 58, 61 (Mo. banc 2001), this quotation was used to support the suggestion that "the fact that the [circuit] court has determined that all relief requested can be granted on the basis of one of those [two] grounds for relief is sufficient to dispose of both counts for purposes of a final judgment." Neither party cites *Hilburn* nor this odd statement as support for their position. This was

7

In the end, the parties' arguments have the air of pleas to equity or judicial economy. The Court understands the parties believe it would be easier and more efficient to allow the circuit court to address the Dispatch's petition one claim at a time, with this Court reviewing the resolution of each claim one by one. But this Court does not decide what can and cannot be appealed. The legislature does, and, in this case, the Court is bound by the language of section 512.020(5) and the interpretation already given to the phrase "final judgment" found in that statute. This judgment does not comply; therefore, DOR has no right to appeal it, and this Court has no jurisdiction to hear such an appeal.

## Conclusion

For the reasons set forth above, this appeal is dismissed.

_____
Paul C. Wilson, Chief Justice

Russell, Powell, Fischer and Ransom, JJ., concur;
Breckenridge, J., dissents in separate opinion filed;
Draper, J., concurs in opinion of Breckenridge, J.

---

proper because the holding of *Hilburn* was that there was no appealable judgment and, therefore, the statement is dicta. Nevertheless, it also is plainly incorrect as explained herein and should not be followed or relied upon in the future.



# SUPREME COURT OF MISSOURI
## en banc

JEFFERSON COUNTY 9-1-1 DISPATCH, )
      )
      Respondent,   )
      )
v.      )      No. SC98904
      )
JOSEPH G. PLAGGENBERG, ACTING   )
DIRECTOR OF THE MISSOURI   )
DEPARTMENT OF REVENUE,   )
      )
      Appellant.   )

## DISSENTING OPINION

I respectfully dissent. Applying this Court's controlling precedent, the circuit court's judgment is final because it disposed of all issues and left nothing for future determination when it granted all the relief requested in Jefferson County 9-1-1 Dispatch's petition. Even though the circuit court's judgment did not expressly rule on all counts, its ruling on count I necessarily disposed of all issues. The circuit court recognized this and expressly stated the judgment resolved all issues as to all parties. This Court has often held a circuit court judgment that grants all the relief sought in a petition effectively disposes of any remaining alternative theories of recovery and is final for appeal. Accordingly, the circuit court's judgment should be held to be a final, appealable judgment so the Court has jurisdiction over the appeal under section 512.020(5), RSMo 2016, and should decide the

appeal on its merits. The principal opinion's finding that there is not a final judgment and its remand for the circuit court to enter an amended judgment expressly dismissing the other claims as moot will unnecessarily cause the parties and their attorneys to expend time, effort, and resources and will waste judicial resources.

On appeal, the director of the department of revenue claims the circuit court erred in declaring section 190.327.5 – which capped at one-quarter of one percent the sales tax the Dispatch could levy to provide central dispatching for emergency services – constitutionally invalid and ordering injunctive relief because section 190.327.5 is not a special law in that it is supported by a rational basis. The director is incorrect. Section 190.327.5 is a special law because no rational basis supports the classification of emergency services boards in section 190.327.5 to exclude those not within charter counties having between 200,000 and 350,000 inhabitants. Because section 190.327.5 is a special law, it was required to comply with the notice and publication requirements of article III, section 42 of the Missouri Constitution before it was enacted. No notice of the law was published in Jefferson County, nor was notice recited in the act, so section 190.327.5 is constitutionally invalid. I would hold the circuit court's judgment is final and should be affirmed.

**Background**

The Dispatch is an emergency services board originally organized under section 190.325, RSMo, to provide central dispatching of emergency services to approximately 220,000 residential and commercial inhabitants within a defined area of Jefferson County. The Dispatch was originally funded by an emergency telephone tax but, in 2009, voters

within the Dispatch's service area voted to replace the emergency telephone tax with an emergency services sales tax of one-half of one percent for 10 years, as authorized by section 190.335, RSMo Supp. 2008. In April 2019, the residents voted to rescind the sunset provision and continue the emergency services sales tax at one-half of one percent. Soon afterward, in July 2019, the legislature amended section 190.327 to add subsection 5, which reads:

> An emergency services board originally organized under section 190.325 operating within a county with a charter form of government and with more than two hundred thousand but fewer than three hundred fifty thousand inhabitants shall not have a sales tax for emergency services or for providing central dispatching for emergency services greater than one-quarter of one percent. If on July 9, 2019, such tax is greater than one-quarter of one percent, the board shall lower the tax rate.

Section 190.327.5.[1] The Dispatch is the only emergency services board originally organized under section 190.325 within a charter county that has between 200,000 and 350,000 inhabitants. In August 2019, citing the enactment of section 190.327.5, the director notified the Dispatch of his intent to decrease the existing one-half of one percent emergency services sales tax to one-fourth of one percent.

The Dispatch filed a petition seeking a judgment declaring section 190.327.5 constitutionally invalid so the director would be required to continue to collect the full one-half percent emergency services sales tax and to pay the revenues to the Dispatch. That claim was set forth in four counts, which were pleaded as follows:

---

[1] All statutory citations to section 190.327.5 are to RSMo Supp. 2019, unless otherwise specified.

3

1) Count I sought a judgment declaring section 190.327.5 violates article III, section 40 of the Missouri Constitution, which prohibits the passage of certain local and special laws and article III, section 42 of the Missouri Constitution, which prohibits the passage of local or special laws without meeting the notice and publication requirements set forth therein and ordering the director to continue to collect the full tax and to pay the revenues to the Dispatch;

2) Count II incorporated all prior paragraphs of the petition and sought a judgment declaring section 190.327.5 violates article I, section 13 of the Missouri Constitution, which prohibits retrospective laws, and ordering the director to continue to collect the full tax and to pay the revenues to the Dispatch;

3) Count III incorporated all prior allegations and sought a writ of mandamus compelling the director to continue to collect the full tax and to pay the revenues to the Dispatch; and

4) Count IV incorporated all prior paragraphs of the petition and sought an injunction to compel the director to continue to collect the full tax and to pay the revenues to the Dispatch.

The Dispatch filed a motion for summary judgment on the theory pleaded in count I that section 190.327.5 is a special law that violated article III, section 42 of the Missouri Constitution because it was enacted without notice and publication. The director filed a cross-motion for summary judgment on the same count, contending section 190.327.5 is not a special law. Thereafter, the circuit court sustained the Dispatch's motion, overruled the director's cross-motion, and entered a judgment granting the following relief:

4

> The Director of Revenue shall continue collecting the full one-half percent (1/2%) emergency services tax on sales within Jefferson County 9-1-1's boundaries and to pay such tax revenues to Jefferson County 9-1-1. . . . This is a final judgment that resolves all issues as to all parties.

The director appealed, invoking this Court's jurisdiction under article V, section 3 of the Missouri Constitution.

## A. Final Judgment

This Court has a duty to examine its jurisdiction *sua sponte*. *Meadowfresh Sols. USA, LLC v. Maple Grave Farms, LLC*, 578 S.W.3d 758, 760 (Mo. banc 2019).[2] "The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists." *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n, Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017) (quoting *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011)). The statute governing the right of appeal in this case is section 512.020(5), RSMo 2016, which provides that an aggrieved party in any civil cause may take an appeal from any final judgment in the case.

For an order to qualify as a judgment, it must comply with the requirements of form set out in Rule 74.01(a). It must be in writing, denominated "judgment," and signed by the judge. Rule 74.01(a); *Butala v. Curators of Univ. of Mo.*, 620 S.W.3d 89, 93 (Mo. banc 2021). The circuit court's judgment meets these form requirements.

Substantively, there are two ways in which a judgment can be final. First, a judgment is final if it "resolves all issues in a case, leaving nothing for future

---

[2] The Dispatch did not challenge this Court's jurisdiction over the appeal but, following inquiry into the matter at oral argument, the parties filed supplemental briefing on the issue.

5

determination." *First Nat'l Bank of Dieterich*, 515 S.W.3d at 221 (internal quotation marks omitted). A judgment may also be final if it disposes of a judicial unit – i.e., it has fully resolved a claim as against at least one party – and has been certified for appeal under Rule 74.01(b). *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994). The circuit court did not even purport to certify the judgment for appeal under Rule 74.01(b), so such certification is not at issue in this case. Consequently, the question is whether the circuit court's judgment resolved all issues in the case and left nothing for future determination.

The Dispatch's motion for summary judgment claimed section 190.327.5 is a special law and it failed to comply with the notice and publication requirements of article III, section 42. Accordingly, it can be presumed that, in sustaining the Dispatch's motion, the circuit court determined section 190.327.5 was, indeed, a special law that failed to comply with article III, section 42's notice and publication requirements.[3] Further, the circuit court ordered the director to "continue collecting the full one-half percent (1/2%) emergency services tax on sales within [the Dispatch's] boundaries and to pay such tax revenues to [the Dispatch]." The circuit court's judgment, therefore, granted the Dispatch all the relief it requested – section 190.327.5 was held constitutionally invalid and the director was ordered to collect the full one-half of one percent emergency services sales tax approved by the voters and to pay the revenues to the Dispatch.

---

[3] When a circuit court does not state the basis for its decision to sustain a motion for summary judgment, the "court is presumed to base its decision on the grounds specified in the motion." *Grisamore v. State Farm Mut. Auto. Ins. Co.*, 306 S.W.3d 570, 573 (Mo. App. 2010).

Once the circuit court entered its judgment on count I declaring the statute constitutionally invalid and upholding the Dispatch's legal right to receipt of the one-half of one percent sales tax, there was nothing left for future determination. Although the circuit court did not expressly dispose of the Dispatch's other legal theories pleaded in support of the same relief, adjudication of the Dispatch's alternative theories would have no further effect on the controversy and, consequently, no further relief could be granted. *See Drury v. City of Cape Girardeau*, 66 S.W.3d 733, 735 & n.2 (Mo. banc 2002). "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 324 (Mo. banc 2014) (alteration and internal quotation marks omitted); *see also Preisler v. Doherty*, 265 S.W.2d 404, 407 (Mo. banc 1954) (holding a "question" is moot when a decision would not have any practical effect on an existing controversy). The circuit court's determination that the statute is constitutionally invalid under article III, section 42 makes it unnecessary for the circuit court to decide whether the statute is also invalid under other provisions of the Missouri Constitution. Its decision on count I rendered the remaining counts moot.

It does not matter that, as the principal opinion notes, the Dispatch sought summary judgment only in relation to its challenge to section 190.327.5's validity under article III, section 42 of the Missouri Constitution and not on its other theories. In *Skatoff v. Alfend*, 411 S.W.2d 169, 171 (Mo. 1966), the plaintiff filed suit seeking to set aside the transfer of real estate to two individual defendants. Because the properties had been damaged by fire,

7

the plaintiff also named as defendants the insurance companies that insured the subject property and sought to have them pay the amount of their liability into the court registry. *Id.* at 172. The individual defendants filed a motion to dismiss the plaintiff's petition, which the circuit court sustained. *Id.* In its judgment sustaining the motion, however, the circuit court did not expressly dismiss the plaintiff's petition as to the insurance companies. *Id.* at 173. Nonetheless, this Court held the circuit court's judgment "in effect operated as a dismissal of the claim against the insurance companies" and was final because the relief sought against the insurance companies was "merely ancillary to that sought in connection with the allegedly fraudulent transfer of the insured property." *Id.* In so holding, the Court stated: "If the finding and judgment on the other issues in the case necessarily excludes and effectively disposes of the issue which is not specifically adjudged, then the judgment is final and appealable." *Id.* (alteration and internal quotation marks omitted). *Skatoff* demonstrates a circuit court's judgment expressly disposing of an issue raised in a dispositive motion may also dispose of issues not raised in the motion when the court's finding and judgment necessarily disposes of those unraised issues.

Consistent with *Skatoff*, this Court's precedent recognizes a circuit court is not required to rule expressly on alternative grounds for relief when its ruling on one ground has granted all relief requested. *See Bone*, 404 S.W.3d at 888 n.5 ("While the trial court did not make findings or conclusions on these arguments, this Court has subject matter jurisdiction because all requested relief was granted and the trial court's judgment was final for purposes of appeal."); *Wells Fargo Bank, N.A.*, 392 S.W.3d at 452 (finding, although "nothing in the circuit court's May 2012 judgment explicitly resolved" the defendants'

8

affirmative defenses and counterclaims, it was "clear that both parties and the court proceeded throughout the trial *de novo* as though" they were resolved, so the judgment implicitly disposed of the issues); *Drury*, 66 S.W.3d at 735 n.2 ("When a trial court fully grants the relief requested in a claim, that claim is fully disposed of for final judgment purposes, regardless of whether the court rules on all alternative arguments supporting that relief."); *State ex rel. Hilburn v. Staeden*, 62 S.W.3d 58, 61 (Mo. banc 2001); *Skatoff*, 411 S.W.2d at 173.[4]

Rather than following this precedent, the principal opinion focuses on the proposition's recitation in *Hilburn*. In that case, the circuit court granted summary judgment on one of 14 different grounds for relief raised in count I of the petition. 62 S.W.3d at 59-60. On appeal, the respondent argued the order could not be a final judgment because it "disposed of only one or two of the 'claims' set out in count I" and failed to grant or deny the prayer for a permanent injunction. *Id.* at 60. The Court held the order was not final because it was not denominated a judgment. *Id.* at 61. Nonetheless, the Court went on to opine nothing prevented the court from issuing the judgment on the grounds stated because all the relief prayed for would be granted and "the injunctive relief prayed for in count II, if not superfluous and moot, would necessarily follow." *Id.* The

---

[4] Among the court of appeals cases also applying this principle are: *Jefferson v. American Finance Group, Inc.*, 163 S.W.3d 485, 487 n.2 (Mo. App. 2005); *Causey v. Medical Life Insurance Co.*, 21 S.W.3d 24, 25 n.2 (Mo. App. 2000); *Clayton Brokerage Co. of St. Louis, Inc. v. Raleigh*, 679 S.W.2d 376, 378 (Mo App. 1984); and *McDonough v. Liberty Mutual Insurance Co.*, 921 S.W.2d 90, 95 (Mo App. 1996), *overruled on other grounds by Farmland Industries, Inc. v. Republic Insurance Co.*, 941 S.W.2d 505, 509 (Mo. banc 1997).

Court then addressed the parties' confusion "that no final judgment can be entered without a resolution of all the other 'claims' presented in count I," stating:

> Although there are indeed several alternative claims or grounds for relief in count I that have not been addressed, the fact that the court has determined that all relief requested can be granted on the basis of one of those grounds for relief is sufficient to dispose of both counts for purposes of a final judgment.

*Id.*

Rather than acknowledging and following this precedent, the principal opinion dismisses this as an "odd statement" in dictum. Although the principal opinion is correct the statement in *Hilburn* is dictum, the principle in *Hilburn* is consistent with this Court's precedent and should not be ignored.[5] The circuit court's judgment granted all relief requested, and the other theories of recovery in the Dispatch's petition are, therefore, moot. The circuit court's judgment disposed of all issues and left nothing for future determination. Indeed, the circuit court and the parties understood the judgment resolved all issues. Both parties filed briefing in this Court concluding the same, and the circuit court's judgment expressly states: "This is a final judgment that resolves all issues as to all parties."

---

[5] If the Court intends to overrule its long-established precedent, it should undertake to do so directly and openly. Doing otherwise sows confusion and violates this Court's presumption against *sub silentio* abrogation of its precedent. *State v. Honeycutt*, 421 S.W.3d 410, 422 (Mo. banc 2013). Because the principal opinion characterizes the statement in *Hilburn* as "odd" dictum, its overruling of that statement may not be recognized as overruling the multiple cases from this Court and the court of appeals, cited above, holding that a circuit court is not required to rule expressly on alternative grounds for relief when its ruling on one ground has granted all relief requested.

10

The principal opinion's refusal to allow the implicit disposition of alternative theories results in an entirely unnecessary remand. Under the principal opinion's decision, the case will be remanded to the circuit court for the circuit court to add a sentence to its judgment expressly doing what it – and the parties – understood the circuit court had already done implicitly, i.e., dismissing the Dispatch's remaining theories as moot. The director will then have to initiate a second appeal, and the parties will go through the costly process of doing all of this over again when nothing substantive has changed.

Clearly, allowing the circuit court to dispose of alternative theories by necessary implication from its dispositive ruling on one of several alternative grounds does not create a risk of piecemeal appeals. The prospect of piecemeal appeals has nothing to do with the implicit or explicit disposition of alternative grounds. Rather, the risk of multiple appeals arises when a party pleads alternative theories of recovery. Whether alternative theories are resolved expressly or by necessary implication when the circuit court grants all relief on a different theory, the counts rendered moot by the circuit court's judgment would no longer be moot after a reversal on appeal. *Robertson v. Police & Firemen's Pension Plan of City of Joplin*, 442 S.W.3d 60, 71 n.12 (Mo. App. 2014). Permitting implicit disposition of alternative theories does not present any greater risk of inefficiency or multiple appeals than not. To the contrary, refusing to allow implicit disposition of alternative theories practically guarantees the case will be heard in this Court at least twice at great cost to the parties and judicial economy.

Having granted the Dispatch all the relief it requested and rendered moot the Dispatch's other legal theories, the judgment resolved all issues in the case, either expressly

11

or implicitly, and left nothing for future determination. Because it resolved all issues in the case, the judgment is final for purposes of section 512.020(5), RSMo 2016. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997).

## B. One Claim

Rather than applying controlling law to find the judgment is final because it disposed of all issues, the principal opinion gratuitously undertakes to consider whether the judgment was a final judgment that could be certified under Rule 74.01(b). A judgment that does not dispose of all issues may nevertheless be final and certified for appeal under Rule 74.01(b) if it either: (1) disposes of all claims by or against at least one party, or (2) disposes of a distinct judicial unit. *Wilson v. City of St. Louis*, 600 S.W.3d 763, 769-70 (Mo. banc 2020) (citing *Gibson*, 952 S.W.2d at 244-45).

Here, it can easily be determined from the face of the judgment that the circuit court did not certify the judgment for appeal under Rule 74.01(b). The principal opinion recognizes this fact, stating: "The circuit court did not certify it or make the predicate finding that justice required such certification." Having determined the circuit court did not certify the judgment for appeal under Rule 74.01(b), there is no reason for the principal opinion to go any further. Nevertheless, the principal opinion expressly opines about whether the judgment could be certified for appeal under Rule 74.01(b): "This judgment was not eligible to be certified under Rule 74.01(b)." No determination about eligibility is required; the principal opinion's analysis can end with its determination that the circuit court did not certify the judgment for appeal under Rule 74.01(b).

12

This is important because, in a seemingly innocuous discussion, the principal opinion changes established law when it gratuitously opines about the number of claims presented in the petition:

> The circuit court's order in this case is a judgment because it met the form requirements in Rule 74.01(a) and it fully resolves the Dispatch's claim that section 190.327.5 violates article III, section 42, of the Missouri Constitution.[2]
>
> [Footnote 2 states: The substantive definition of judgment is "a legally enforceable judicial order that fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim." *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019). As a matter of form, such an order must be in writing, signed by the judge, and denominated a "judgment" or "decree" to be considered a judgment. Rule 74.01(a).]
>
> But it is not a "final judgment" for purposes of section 512.020(5) because that is the only one of the Dispatch's three claims that it resolves. The Dispatch's claim that section 190.327.5 violates the complete prohibition for certain types of local or special laws found in article III, section 40, as well as its claim that this statute violates the prohibition against laws that are retrospective in their operation found in article I, section 13, remained (and still remain) pending.
>
> "[I]n determining whether an action presents more than one claim for relief, the focus is on the number of legal rights asserted in the action." *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994) ("*CEE*"). If a petition "seeks to enforce only one legal right, it states a single claim, regardless of the fact that it seeks multiple remedies." *Id.* Here, the Dispatch's petition sought to enforce at least three legal rights: (a) the constitutional prohibition against certain local or special laws under article III, section 40; (b) the constitutional requirement that local or special laws that are not prohibited outright by article III, section 40 nevertheless cannot be passed without prior notice by publication as set forth in article III, section 42; and (c) the constitutional prohibition against the enactment of statutes that are retrospective in their operation found in article I, section 13. The Dispatch's prayers for declaratory judgment, mandamus, and/or an injunction are merely the remedies the Dispatch seeks should it prevail in its efforts to enforce one or more of these three legal rights.

Superficially, the principal opinion's discussion of the number of claims in the petition may appear innocuous, but it has far-reaching ramifications. In these paragraphs, the principal opinion utilizes a general definition of "claim," when "claim" is a legal term of art referring to the judicial unit for appeal. Nowhere in the discussion does the principal opinion acknowledge its deviation from the Court's settled precedents, provide analysis to support such deviation, or consider the impact of its mistaken usage of "claim." Further, its unacknowledged deviation from controlling law and mistaken usage of a general or lay meaning of "claim" is at odds with other legal doctrines that have historically utilized the same definition used in the final judgment analysis.

The word "claim" has two meanings. The principal opinion uses its lay meaning: "what is otherwise called a cause of action or theory of recovery." *Butala*, 620 S.W.3d at 93 n.4. This is its most general meaning and is broad enough to refer to any legal issue presented for determination, including "some of several issues arising out of the same transaction or occurrence," legal issues, remedies, or legal theories. *See Gibson*, 952 S.W.2d at 244; *Comm. for Educ. Equal.*, 878 S.W.2d at 450-51. As a legal term of art, however, "claim" refers to "the bundle of legal theories or causes of action that may be asserted as against one party arising from a particular set of facts," *Butala*, 620 S.W.3d at 93 n.4, i.e., a judicial unit, *Gibson*, 952 S.W.2d at 244.

Under controlling law, "claim" as a legal term of art is the appropriate definition to use when determining whether a judgment is final for purposes of appeal. *Gibson*, 952 S.W.2d at 244; *Comm. for Educ. Equal.*, 878 S.W.2d at 451. In *Gibson,* the Court held, "The required 'judicial unit for appeal' has a settled meaning: 'the final judgment ***on***

14

***a claim*** *. . . .'"  Id.* at 244 (emphasis added) (quoting *State ex rel. State Highway. Comm'n*

*v. Smith,* 303 S.W.2d 120, 123 (Mo. 1957)).  "Rule 74.01(b) permits a trial court to

designate as final a judgment as to one or more claims but fewer than all claims.  Thus, ***the***

***minimum unit of disposition is at least one claim***."  *Comm. for Educ. Equal.*, 878 S.W.2d

at 450 (emphasis added) (internal quotation marks omitted).  Said another way, Rule

74.01(b) "conditioned the exercise of discretion by the trial court on the existence of a

judgment that disposed of ***at least one claim as to one party***."  *Id.* at 451 (emphasis added).

 *Committee for Educational Equality* undertook a lengthy analysis to establish the

meaning of "claim" as a legal term of art.  The Court held:

> If a complaint seeks to enforce only one legal right, it states a single claim,
> regardless of the fact that it seeks multiple remedies.  A further refinement
> of what is meant by "one claim" is that a claim is the aggregate of operative
> facts which give rise to a right enforceable in the courts.  Worded somewhat
> differently, *claims are considered separate if they require proof of different
> facts and the application of distinguishable law*, *subject to the limitation that
> severing the claims does not run afoul of the doctrine forbidding the splitting
> of a cause of action.*

*Id.* (emphasis added) (citations and internal quotation marks omitted).  It is easy to

understand how a cursory reading of *Committee for Educational Equality* could lead to the

mistake manifested in the principal opinion's determination that the Dispatch's petition

asserts three claims.  After all, for the Dispatch to prevail under its theories that section

190.327.5 violates article III, section 40; article III, section 42; or article I, section 13, each

theory would require subtly different evidentiary facts and the application of different law.[6]

---

[6] Contributing even more to the confusion surrounding the meaning of "one claim" is the
fact this Court has used both meanings of "claim" in a single decision determining whether

15

But "separate legal theories are not to be considered as separate claims, even if the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991). As subsequent decisions make clear, one claim encompasses the enforcement of all legal rights arising from the same transaction or occurrence. *Gibson*, 952 S.W.2d at 244.

Claims cannot be considered separate if doing so would split a cause of action.[7] *Comm. for Educ. Equal.*, 878 S.W.2d at 451. This Court has stated the doctrine prohibiting splitting a cause of action as follows:

> A cause of action which is single may not be split and filed or tried piecemeal, the penalty for which is that an adjudication on the merits in the first suit is a bar to a second suit. In general, the test for determining whether a cause of action is single and cannot be split is: 1) whether separate actions brought arise out of the same act, contract or transaction; 2) or whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. The word "transaction" has a broad meaning. It has been

there was a final judgment. In *Gibson*, after deciding the circuit court's order dismissing fewer than all counts against one of the defendants was not a final judgment because the counts were "differing legal theories or issues presented for recovery *on the same claim*," 952 S.W.2d at 244 (emphasis added), the Court then referred to the various counts against the defendant as "the claim*s*" against him, *id.* at 245 (emphasis added).

[7] "Cause of action" has general and technical meanings that mirror the different meanings of "claim." In its general meaning, "cause of action" merely refers to a theory of recovery. *Cause of Action*, BLACK'S LAW DICTIONARY (11th ed. 2019); *cf. Butala*, 620 S.W.3d at 93 n.4. As a term of art, however, it refers to "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *Cause of Action*, BLACK'S LAW DICTIONARY (11th ed. 2019); *accord Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002). As terms of art, "cause of action" and "claim" are "nearly the same." *Chesterfield Vill.*, 64 S.W.3d at 318. "No practical difference is seen between the new 'claim for relief' and the old 'cause of action.'" *Gerber v. Schutte Inv. Co.*, 194 S.W.2d 25, 28 (Mo. 1946).

16

defined as the aggregate of all the circumstances which constitute the foundation for a claim. It also includes all of the facts and circumstances out of which an injury arose.

*King Gen. Contractors*, 821 S.W.2d at 501. The principal opinion's definition of "one claim" would run afoul of the doctrine forbidding splitting a claim because the constitutional violations the Dispatch asserts in counts I and II all arise from the same set of facts.

That constitutional violations arising from the same set of facts are not separate claims but rather aspects of one claim is clearly demonstrated in *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 321 (Mo. banc 2002). There, the plaintiff prevailed in an action against the defendant on the theory that the defendant violated the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Missouri Constitution. *Id.* at 317. Nonetheless, the plaintiff filed a second lawsuit seeking damages asserting violations of, among other things, article I, sections 26 and 28 of the Missouri Constitution, which had not been raised in the first action. *Id.* This Court held both actions were based on the actions of the city in its 1994 zoning decision, *id.* at 320, and:

> Any claim for damages that Chesterfield Village attempts to assert in this second action *is part of the claim in the previous action* against the city of Chesterfield for refusing to rezone the tract. The factual basis for asserting constitutional violations is the same in both actions. A somewhat altered legal theory, or even a new legal theory, does not support a new claim based on the same operative facts as the first claim. Chesterfield Village *cannot split its claim*.

17

*Id.* at 321 (emphasis added). Merely asserting the violations of different constitutional provisions, therefore, does not create separate claims even when the different provisions would require different evidentiary details.

*Committee for Educational Equality*'s holding that a "claim" encompasses all the rights and remedies arising out of a single transaction or occurrence was made even clearer in *Gibson*. There, the plaintiffs sued a priest and a Catholic diocese, "alleging nine counts: battery, negligent hiring/ordination/retention, negligent failure to supervise, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of fiduciary duty, conspiracy, agency liability, and independent negligence of the Diocese." 952 S.W.2d at 243-44. The circuit court issued two judgments it determined were final and appealable; one dismissed all counts against the Diocese, and the other dismissed all counts against the priest except battery, negligent infliction of emotional distress, and intentional infliction of emotional distress. *Id.* at 244. The question before the Court was whether the judgment against the priest was final when it dismissed the counts alleging "negligent hiring/ordination/retention," negligent failure to supervise, breach of fiduciary duty, conspiracy, and agency liability but left unresolved the counts alleging battery, negligent infliction of emotional distress, and intentional infliction of emotional distress. *Id.* In resolving that issue, the Court reiterated that a claim is defined in relation to the transaction or occurrence at issue, stating:

> Although a circuit court may designate its judgment final as to particular claims, this designation is effective only when the order disposes of a distinct "judicial unit." The required judicial unit for an appeal has a settled meaning: the final judgment on a *claim*, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of

18

the *claim*. An order dismissing some of several alternative counts, each stating only one legal theory to recover damages for the same wrong, is not considered an appealable judgment while the other counts remain pending because the counts are concerned with a single fact situation. It is differing, separate, distinct transactions or occurrences that permit a separately appealable judgment, *not differing legal theories or issues presented for recovery on the same claim*.

*Id.* (emphasis added) (citations and internal quotation marks omitted). The Court then dismissed the appeal against the priest because the remaining counts "clearly ar[o]se from the same set of facts, and the same transactions and occurrences, as the counts supposedly appealed" and, therefore, the judgment was not a final judgment on a claim, i.e., it did not dispose of a distinct judicial unit. *Id.*

In *Gibson*, as in prior cases, "claim" was used as a legal term of art meaning "distinct judicial unit," not "theory of recovery." That is clear from the *Gibson* court's application of the principles it articulated. In holding that the circuit court's order – which dismissed fewer than all causes of action against the priest arising from one set of facts – had not disposed of a distinct judicial unit, the Court in *Gibson* was holding the circuit court had not resolved a single "claim" as against the priest.

The Court's analyses in *Chesterfield Village* and *Gibson* make unavoidably clear that counts asserting different theories of recovery – including the violations of different constitutional provisions – are only aspects of one claim when the theories arise out of the same transaction or occurrence. Accordingly, whether an action presents multiple claims, as that word is used in the context of final judgments, or only a single claim is not determined simply by asking whether the counts relate to different constitutional provisions or require proof of different evidentiary facts. Rather, consistent with the prohibition

19

against splitting a cause of action, "[i]t is 'differing,' 'separate,' 'distinct' transactions or occurrences" that divide theories and the assertions of multiple legal rights into separate claims. *Id.*

The Dispatch sets forth one claim in its four-count petition – that section 190.327.5 is constitutionally invalid so the director should be ordered to continue to collect and pay over to the Dispatch the full one-half percent emergency services sales tax. Each count in the petition is based on the same factual allegations. No count required the application of different operative facts, and all counts sought the same relief. Therefore, the petition set forth only one claim. What the principal opinion calls different "claims" are merely what the Court in *Gibson* called "differing legal theories or issues presented for recovery on the same claim." *Id.*

Acquiescing in the principal opinion's failure to use "claim" as a legal term of art has significant ramifications for other areas of law. It is evident from the role the doctrine against splitting a cause of action plays in determining when a petition presents a single claim or separate claims that the final-judgment analysis shares its common transaction-or-occurrence-based meaning of "claim." So applying the general, informal meaning of "claim" in determining whether the Dispatch's petition presents one or multiple claims will have an impact on what "claim" means in the doctrine prohibiting splitting a cause of action.

*Res judicata* also shares a transaction-or-occurrence-based concept of claim. *Chesterfield Vill.*, 64 S.W.3d at 318. *Res judicata* precludes relitigation of a "claim" formerly made, and "claim" is defined for purposes of *res judicata* as "[t]he

20

aggregate of operative facts giving rise to a right enforceable by a court." *Id.* (alteration in original). When a judgment is rendered in the plaintiff's favor, the judgment extinguishes the plaintiff's claim, which includes "all rights of the plaintiff to remedies against the defendant with respect to all or any party of the transaction, or series of connected transactions, out of which the action arose." *King Gen. Contractors, Inc.*, 821 S.W.2d at 502 (quoting the Restatement (Second) of Judgments § 24 (1982)). Similarly, "[a] valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff *on the same claim.*" Restatement (Second) of Judgments § 19 (1982) (emphasis added).

This is not to say, however, that the principal opinion's use of the general meaning of "claim" has no appeal. The general meaning aligns with common informal usage, as the word is often used to refer to mere theories of recovery. Nonetheless, given the serious risk of disturbing other doctrines that have historically shared a common definition of "claim" with that used to decide whether a judgment is final, the Court should decide whether to use the general meaning of "claim" in determining whether there is a final judgment only after fully weighing its benefits against its detriments. This is not the proper case, where it is unnecessary to resolution of the issues and has not been briefed or argued. And should the Court so decide, it should openly acknowledge it is adopting a definition of "claim" at odds with the definition employed in *Committee for Educational Equality* and *Gibson*.

To summarize, in the context of final judgments, "claim" is a legal term of art that means "the bundle of legal theories or causes of action that may be asserted as against one

21

party arising from a particular set of facts." *Butala*, 620 S.W.3d at 93 n.4.  It encompasses all the rights and remedies arising from the aggregate of operative facts from which the action arises.  *See Comm. for Educ. Equal.*, 878 S.W.2d at 451.  That meaning of "claim" is shared by other foundational aspects of the law regarding the preclusive effect of judgments, *see, e.g.*, *King Gen. Contractors, Inc.*, 821 S.W.2d at 502, and should be preserved to continue the settled application of those doctrines.  The principal opinion's application/substitution of the general meaning of "claim" – cause of action or theory of recovery – in place of its meaning as a term of art – judicial unit of rights and remedies arising from same transaction or occurrence – fails to follow the Court's precedent and will have unwanted effects in other areas of law.

Whether there is a final judgment in this case, however, can be determined solely by deciding whether the judgment disposed of all issues and left nothing for future determination.  The principal opinion concludes the judgment did not dispose of all issues and was not certified under Rule 74.01(b).  As a result, even if accepting the principal opinion's conclusions, it is unnecessary to analyze the number of claims set forth in the petition or to analyze whether the judgment could have been certified under Rule 74.01(b).  But for the principal opinion's unnecessary analysis of the number of claims presented in the Dispatch's petition, there would be no reason for the Court to decide in this case whether to follow its precedent and use the meaning of "claim" as a legal term of art to be synonymous with judicial unit or to depart from precedent and use the general meaning of "claim."

Rather than engaging in unnecessary analyses about the number of claims presented in the petition and whether the judgment was eligible for certification under Rule 74.01(b), the Court should adhere to its precedent. The judgment resolved all issues, either expressly or implicitly, and left nothing for future determination. Therefore, the judgment is a final judgment over which this Court has jurisdiction.

## C. Section 190.327.5 Constitutionally Invalid

Having determined the director appeals from a final judgment, the Court should decide the case on its merits. The director claims the circuit court erred in granting summary judgment in the Dispatch's favor of because section 190.327.5 is not a special law. In defense of the judgment, the Dispatch claims there is no rational basis for the classifications in section 190.327.5, so it is a special law that was required, but failed, to meet the notice and publication requirements of article III, section 42

"A circuit court's grant of summary judgment is subject to *de novo* review on appeal." *Holmes v. Steelman*, 624 S.W.3d 144, 148 (Mo. banc 2021). "The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially." *Am. Fed'n of Teachers v. Ledbetter*, 387 S.W.3d 360, 362 (Mo. banc 2012). As the movant for summary judgment, the Dispatch bore the burden of demonstrating the material facts are not in genuine dispute and it was entitled to judgment as a matter of law. *City of Aurora v. Spectra Commc'ns Grp., LLC*, 592 S.W.3d 764, 781 (Mo. banc 2019). Further, as the party challenging the constitutional validity of section 190.327.5, the

Dispatch bore the burden of overcoming the presumption of constitutional validity to which every statute is entitled. *Id.* at 780.

Article III, section 42 provides:

No local or special law shall be passed unless a notice, setting forth the intention to apply therefor and the substance of the contemplated law, shall have been published in the locality where the matter or thing to be affected is situated at least thirty days prior to the introduction of the bill into the general assembly and in the manner provided by law. Proof of publication shall be filed with the general assembly before the act shall be passed and the notice shall be recited in the act.

By its plain language, article III, section 42 applies only to local or special laws. Therefore, for the Dispatch to show it was entitled to judgment as a matter of law, it first had to show section 190.327.5 is a special law.

A law is special if it applies only to a class of persons or places and the classification is not supported by a rational basis. *City of Aurora*, 592 S.W.2d at 778. Said another way, "if the line drawn by the legislature is supported by a rational basis, the law is not local or special." *Id.* at 780. "Under rational basis review, this Court will uphold a statute if it finds a reasonably conceivable state of facts that provide a rational basis for the classifications." *Id.* at 781. Finally, identifying a rational basis for the classification "is an objective inquiry that does not require unearthing the legislature's subjective intent in making the classification." *Id.*

Section 190.327.5 provides:

An emergency services board originally organized under section 190.325 operating within a county with a charter form of government and with more than two hundred thousand but fewer than three hundred fifty thousand inhabitants shall not have a sales tax for emergency services or for providing central dispatching for emergency services greater than one-quarter of one

24

percent. If on July 9, 2019, such tax is greater than one-quarter of one percent, the board shall lower the tax rate.

Accordingly, section 190.327.5 applies only to a class of emergency services boards that: (1) were originally organized under section 190.325; (2) are within a county with a charter form of government; and (3) are within a county with more than 200,000 but fewer than 350,000 inhabitants. The Dispatch is the only emergency services board that meets the statute's requirements; all other emergency services boards are excluded from the statute's effect.

The Dispatch claims there is no rational basis for section 190.327.5 to apply only to a class of emergency services boards defined by such criteria as county population and form of government. It also claims the General Assembly had no rational basis for "overriding a decision that the voters made to tax themselves for emergency services that they desire." (Emphasis omitted). In response, the director argues "the General Assembly has a legitimate interest in overseeing the use of the taxing power it grants to the entities it creates," and a rational basis "to dial back the [Dispatch]'s taxing authority" because the Dispatch amassed substantial assets and was on track to pay off its long-term debt around the time the half-cent tax was set to reduce to a quarter cent. The director claims section 190.327.5 serves to curb the Dispatch's alleged economic waste and inefficiency, which is demonstrated by the fact other emergency services boards field calls for emergency services at a much lower cost than the Dispatch.

Although both parties focus portions of their arguments on the reasonable basis, or lack thereof, for a law limiting an emergency services board's taxing authority, i.e., the

statute's legitimate purpose, the relevant question is whether the *classification* is supported by a rational basis. *City of Aurora*, 592 S.W.3d at 781. In *School District of Riverview Gardens v. St. Louis County*, 816 S.W.2d 219, 220 (Mo. banc 1991), this Court considered a statute requiring most of the state's political subdivisions to revise their tax levies immediately after a reassessment to produce the same amount of tax revenue produced in the previous year. In every political subdivision except "those the greater part of which is located in first class charter counties adjoining any city not within a county or any city not within a county," the governing body of a political subdivision could adjust the levy to account for inflation without voter approval. *Id.* at 220. The powers of political subdivisions in St. Louis County and the city of St. Louis to adjust for inflation were more limited. *Id.*

The Court found the classification was not rationally related to a legitimate legislative purpose. Rather, the Court found it was based on "a unique, constitutionally-sanctioned form of government recognized for the City of St. Louis . . . *or mere geographic proximity to the City of St. Louis*." *Id.* at 222 (emphasis added). As a result, the Court held, "while geographic considerations might justify a statutory classification under some circumstances, e.g., flood control, this classification bears no rational relationship to procedures for tax levy adjustments following reassessment." *Id.*

Similarly, in *City of Chesterfield v. State*, 590 S.W.3d 840, 845 (Mo. banc 2019), this Court rejected a special-laws challenge to two countywide sales tax laws. The first law provided that a first-class county with a charter form of government and a population of 900,000 or more – i.e., St. Louis County – could adopt a countywide sales tax by passing

26

an ordinance. *Id.* at 842. The second law classified cities in St. Louis County into two groups and set forth a procedure for distributing the countywide sales tax between the groups. *Id.* at 842-43. In finding the law's classifications were supported by a rational basis, the Court noted the class's unique characteristics and held the classifications "reasonably serve[d] the state's legitimate interest in providing stable revenue sources for [certain] cities and discouraging opportunistic annexations." *Id.* at 845.

Like the classifications in *City of Chesterfield* and *School District of Riverview Gardens*, section 190.327.5's population-based considerations might justify a statutory classification under some circumstances, but excluding emergency services boards within counties that do not have between 200,000 and 350,000 inhabitants bears no rational relationship to the state's interest in eliminating government waste and inefficiency. The director claims emergency services boards in other counties may fall within the ambit of section 190.327.5 in the future if their county populations change or their counties choose to adopt charters. The fact class members change based on county population or form of government, but not based on the fiscal responsibility or health of the emergency services boards, shows the classification is not rationally related to the state's interest in incentivizing fiscal responsibility.

I am unable to conceive of any set of facts under which defining the class of emergency services boards affected by section 190.327.5 to include only those boards within charter counties with between 200,000 and 350,000 inhabitants and to exclude all others would reasonably serve the state's legitimate interest in reducing government waste and inefficiency and incentivizing fiscal responsibility. *Cf. City of Chesterfield*,

27

590 S.W.3d at 845 (finding a law was not a special law because it drew classifications that reasonably served a legitimate state interest). Consequently, I would find section 190.327.5 is a special law and, for that reason, it had to comply with the notice and publication requirements in article III, section 42 before it was passed.

Among other things, article III, section 42 requires notice of a special law to be "published in the locality where the matter or thing to be affected is situated at least thirty days prior to the introduction of the bill into the general assembly" and requires the notice to be "recited in the act." In the Dispatch's statement of uncontroverted material facts filed in support of its motion for summary judgment, the Dispatch stated: "Notice was not published in Jefferson County at least 30 days prior to the introduction of Senate Bill 291 [, which enacted section 190.327.5,] into the General Assembly." It further stated: "Neither proof of publication nor notice is recited within Senate Bill 291."[8]

After the Dispatch filed its statement of uncontroverted material facts, the director was required to file a response either admitting or denying the Dispatch's statements of material fact. Rule 74.04(c)(2); *Green v. Fotoohighiam*, 606 S.W.3d 113, 117 (Mo. banc 2020). A failure to respond in compliance with Rule 74.04(c)(2) "with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph." Rule 74.04(c)(2); *Green*, 606 S.W.3d at 117. The director did not file a

---

[8] The director does not dispute the Dispatch stated each material fact "with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts." Rule 74.04(c)(1).

28

response admitting or denying any of the Dispatch's numbered paragraphs, including those relating to notice and publication, so the director admitted the truth of those paragraphs.

Accordingly, notice was neither published in Jefferson County nor recited in Senate Bill No. 291 in accordance with article III, section 42. The circuit court, therefore, was correct to find the Dispatch was entitled, as a matter of law, to a judgment declaring section 190.327.5 constitutionally invalid and granting appropriate injunctive relief. The circuit court's judgment should be affirmed.

## Conclusion

Ultimately, the controlling decisions of this Court compel a holding that the circuit court's judgment disposed of all issues and left nothing for future determination, so it is a final judgment for purposes of appeal under section 512.020(5), RSMo 2016, and the Court should decide the appeal on its merits. The population-based classification established in section 190.327.5 is not supported by a rational basis, so it is a special law that had to meet the notice and publication requirements of article III, section 42 before it was enacted. The senate bill that enacted section 190.327.5 did not comply with the notice and publication requirements of article III, section 42. Therefore, section 190.327.5 is constitutionally invalid. For these reasons, I would affirm the circuit court's judgment.

_____

PATRICIA BRECKENRIDGE, JUDGE